1 KUTAK ROCK LLP
Saundra K. Wootton, Bar No. 224674
2 saundra.wootton@kutakrock.com
Bradley P. Boyer, Bar No. 179430
3 bradley.boyer@kutakrock.com
777 South Figueroa Street
4 Suite 4550
Los Angeles, California 90017-5800
5 Telephone: (213) 312-4000
Facsimile: (213) 312-4001
6

Attorneys for Plaintiff
7 8th SENSE, INC.

8
**UNITED STATES DISTRICT COURT**
9
**CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**
10

11 8th SENSE, INC.,                              Case No.

12            Plaintiff,                         **COMPLAINT FOR DAMAGES
                                                 AND DEMAND FOR JURY
13    v.                                         TRIAL**

14 ALESSANDRO MOGUL KHAN, a/k/a
NAWAB SHER, and SUSTENANCE
15 INC.,

16            Defendants.

17

18        Plaintiff 8th Sense, Inc. ("8th Sense"), through Kutak Rock LLP, by way of

19 Complaint against Defendants Alessandro Mogul Khan ("Khan"), a/k/a/ Nawab

20 Sher, and Sustenance Inc. ("Sustenance"), hereby alleges as follows:

21                                **INTRODUCTION**

22        1.    Plaintiff 8th Sense is a Canadian corporation, engaged in the medical

23 products industry, with clients that include large provincial health systems, such

24 Alberta Health Services and Ottawa Health Services. Defendant Khan owns and

25 controls Sustenance, his alter ego, which is engaged in the business of buying and

26 selling personal protective equipment ("PPE"). Seizing on the enormous demand for

27 PPE during the Covid-19 pandemic, and the potential for massive sales volume from

28 8th Sense's Canadian provincial clients, Khan induced 8th Sense to transfer more than

four millions dollars to Sustenance for the purchase of 3M N-95 face masks, based on his representations – supported in part for by fake documents – that his PPE distributors were authorized distributors of 3M PPE.

2.     In fact, Khan's distributors were not authorized 3M distributors and delivered counterfeit 3M face masks to Plaintiff's customers.  Those counterfeit products were seized and destroyed by Health Canada, Canada's Federal Ministry of Health, and resulted in the devasting ban of 8th Sense from doing business with Canadian governmental health systems.  Upon discovering that Khan and Sustenance had provided counterfeit product and failed to deliver on other orders, Plaintiff terminated its contracts with Sustenance and demanded the return of its money. Defendants have failed to refund any of the millions of dollars they defrauded from Plaintiff.

3.     Consequently, by this action, Plaintiff seeks to recover judgment against Defendants Khan and Sustenance for compensatory, actual, consequential and special damages, as well as punitive and exemplary damages commensurate with the egregious nature of Khan's and Sustenance's wrongdoing, in an amount sufficient to punish and dissuade.

## THE PARTIES

4.     Plaintiff 8th Sense is a Canadian corporation with its principal place of business located in Quebec, Canada.

5.     Defendant Khan is an individual, a resident of California and the owner and chief executive officer of Defendant Sustenance.

6.     Defendant Sustenance is a California corporation with its principal place of business located at 3940 Broad Street, Suite No. 7461, San Luis Obispo, California.

## JURISDICTION AND VENUE

7.     Plaintiff 8th Sense is a citizen of Canada.

8.     Defendant Khan is a citizen of California.

9.      Defendant Sustenance is a citizen of California.

10.     This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship and the amount in controversy exceeds $75,000.

11.     Venue is proper pursuant to 28 U.S.C. § 1391(b)(3) because Defendants Khan and Sustenance are subject to jurisdiction in this district.

## RELEVANT FACTS

**Background**

12.     Part of 8th Sense's business involves the buying and selling of PPE. Sustenance is engaged in the business of buying and selling PPE.

13.     In the fall of 2020, as the second wave of the Covid-19 Pandemic surged throughout North America, 8th Sense was actively looking to source PPE for its clients, which included, among others, Canadian provincial health systems in Alberta and Ottawa.

14.     At the time, N-95 face masks manufactured by 3M, which is based in Minnesota, were in great demand.

15.     In or about November 2020, Nicolas Giguere ("Giguere"), the Chief Executive Officer of 8th Sense, was introduced to Khan.  Khan and Sustenance were previously unknown to 8th Sense. Realizing that 8th Sense could be a significant buyer of PPE, Khan sought to validate himself and his company by impressing upon Giguere that Khan was very successful and had substantial resources.  He attempted to do so by providing Giguere images of Khan's Range Rover and palatial $8 million home rising above the ocean, telling Giguere, among other things, that he had a private plane, and that his grandfather was a billionaire, having made his fortune in the petroleum industry.

16.     In November 2020, Khan represented to Giguere that his PPE sources were authorized 3M distributors.

17.     Khan also represented to Giguere that the 3M face masks and other PPE

KUTAK ROCK LLP
ATTORNEYS AT LAW
LOS ANGELES

- 3 -

COMPLAINT

that his sources distributed were manufactured by 3M in the United States. For example, on November 17, 2020, Khan sent a message confirming that 3M's model 1860 face masks were made in the United States. *See* <u>Exhibit 1</u>.

18.    On November 20, 2020, in response to Giguere's request for a video showing the actual boxes of 3M face masks and an indication that they were for 8th Sense, Khan provided a video showing a sign with Giguere's first name, "Nicolas" next to words "8th Sense", with what appeared to be boxes of 3M face masks in the background.  *See* <u>Exhibit 2</u>.

19.    8th Sense relied upon those representations and other similar representations and documents endorsed by Khan in placing orders and paying for millions of dollars of PPE from November 17, 2020 to February 2, 2021.

### *Purchase Order No. 102*

20.    More specifically, on November 17, 2020, 8th Sense issued to Sustenance Purchase Order No. 102 for 40,000 3M face masks, model 1860, for a purchase price of $136,000, and requirements, *inter alia*,  that they are "made in the USA with globally sourced materials", and that "the seller guarantees that each mask is genuine." *See* <u>Exhibit 3</u>.

21.    Giguere made Khan aware that this order was for the Alberta Healthcare Services.

22.    Sustenance, in turn, issued  to 8th Sense Invoice No. 33538, dated November 17, 2020, which mirrored the product and unit price descriptions in Purchase Order No. 102 and did not object to or otherwise negate the requirements in Purchase Order No. 102, but reduced the quantity to 22,200. *See* <u>Exhibit 4</u>.

23.    On November 18, 2020, 8th Sense wired $136,000 to an account designated by Sustenance.[1]

### *Purchase Order No. 103*

---

[1] Because the first 36,760 of these masks delivered by Sustenance eventually were deemed counterfeit by Health Canada, 8th Sense requested refund of the full $136,000.

24. The following week, 8th Sense issued to Sustenance Purchase Order No. 103, dated November 25, 2020, for 47,840 3M face masks, model 8210, for a purchase price of $145,912, and requirements, *inter alia*, that they are "made in the USA with globally sourced materials", and that "the seller guarantees that each mask is genuine." *See* Exhibit 5.

25. Sustenance, in turn, issued to 8th Sense Invoice No. 33550, dated November 25, 2020, which mirrored the product, quantity and price descriptions in Purchase Order No. 103 and did not object to or otherwise negate the requirements in Purchase Order No. 103. *See* Exhibit 6.

26. On November 27, 2020, 8th Sense wired $145,912 to an account designated by Sustenance.

27. On December 3, 2020, Sustenance delivered 25,600 3M model 8210 face masks.[2] But because Sustenance failed to deliver the other 22,240 face masks that 8th Sense had paid for, on February 2, 2021, 8th Sense demanded that Sustenance refund $67, 832 of the $146, 912 paid.

28. To date, Sustenance has failed to refund any of the $67,832 demanded.

### *Purchase Order No. 105*

29. 8th Sense also issued to Sustenance Purchase Order No. 105, dated November 25, 2020, for 300,000 3M face masks, model 1860 small, for a purchase price of $825,000, and requirements, *inter alia*, that they are "made in the USA with globally sourced materials", and that "the seller guarantees that each mask is genuine." *See* Exhibit 7.

30. Sustenance, in turn, issued to 8th Sense Invoice No. 33552, dated November 25, 2020, that priced the 300,000 3M face masks, model 1860 small, at $945,000, but did not object to or otherwise negate the requirements in Purchase Order No. 105. *See* Exhibit 8.

---

[2] Despite having been fully paid, Sustenance erroneously issued Invoice No. 33555 for that delivery with a balance due of $83,200.

31.     8th Sense wired payment to Sustenance in several transfers for a total amount of $935,000 between November 27 and December 12, 2020.

32.     By early December 2020, Khan and Sustenance had successfully solicited and accepted multiple purchase orders from 8th Sense. Seeking to leverage 8th Sense's relationship with provincial health systems in Canada,  and the enormous sales volume those entities could generate for Sustenance, Khan sent Giguere and 8th Sense a series of documents and messages designed to gain 8th Sense's trust and confidence in Khan's ability to deliver genuine 3M PPE from what Khan represented were Sustenance's authorized 3M distributors.

33.     Specifically, on December 1, 2020, Khan sent Giguere an image of a 3M packaging document relating to 3M face masks stating that the product was made in the USA, as he reiterated in his message transmitting the document.  *See* Exhibit 9.

34.     On December 2, 2020, Khan, attempting to create an impression that he had access to key persons at 3M, sent Giguere a message, stating "Call you when I get done with 3M attorney".  Exhibit 10.

35.     On December 7, 2020, Khan sent Giguere images of a box purportedly holding 3M face masks, and a document from the National Institute of Occupational Health and Safety ("NIOSH") indicating that the 3M's 1860 series face masks were genuine and came from 3M's Minnesota location.  *See* Exhibit 11.

36.     On December 8, 2020, Khan sent 8th Sense 3M certificates confirming that Sustenance's suppliers are authorized 3M distributors.   *See* Exhibit 12 and Exhibit 13.

37.     On December 15, 2020, Khan again represented to 8th Sense that the 3M face masks were made in the United States, specifically writing, "St. Paul MN" in response to an inquiry from 8th Sense as to where they were made. *See* Exhibit 14.

38.     That was followed by a Letter of Attestation from Sustenance's counsel, the Yeager Law Firm, dated December 16, 20210, which was addressed to "3M

Distributor/Reseller" and concerned "3M Personal Protective Equipment Supplies". The Letter of Attestations stated, *inter lia*:

> This letter shall certify that my client has bank records demonstrating sufficient funds into the millions of dollars available for the purchase of the above Product. There are no known liens, commercial obligations or encumbrances of any kind afflicting said funds s that would affect Sustenance Inc.'s ability to conduct business and purchase Products.

*See* <u>Exhibit 15</u>.

### *Purchase Order No. 107*

39.    Relying on the foregoing representations and the afore-described documents sent by Khan, 8th Sense placed a very large order for 1 million 3M face masks. Specifically, on December 23, 2020, 8th Sense issued to Sustenance Purchase Order No. 107, dated December 23, 2020, for 1 million 3M face masks, model 1860, for a purchase price of $2,090,000, and requirements, *inter alia*, that they are "made in the USA with globally sourced materials", and that "the seller guarantees that each mask is genuine." *See* <u>Exhibit 16</u>.

40.    Sustenance, in turn, issued to 8th Sense Invoice No. 33577, dated December 30, 2020, which did not object to or otherwise negate the requirements in Purchase Order No. 107. *See* <u>Exhibit 17</u>.

41.    In furtherance of Purchase Order No. 107, 8th Sense wired the following amounts on the following dates to an account designated by Khan:

- Dec. 24, 2020:        $300,000
- Dec. 29, 2020:        $300,000
- Dec. 30, 2020:        $150,000
- Dec. 31, 2020:        $1,340,000

42.    On December 31, 2020, Khan wrote to Giguere and represented: "*We will have packing list, AWB and other pertinent documents in 4 hours for the 1M[illion] masks going out today[.]  I am waiting for the 300k but it is ready and waiting for pickup, so we will have shipped out today . . .*" *See* <u>Exhibit 18</u>.

43.    Unbeknownst to 8th Sense, from the $2,090,000 that 8th Sense had wired

to Sustenance for Purchase Order No. 107, only $190,000 actually reached the distributor. The rest was converted by Khan and Sustenance.

44. To conceal the conversion, the next day, on January 1, 2021, Khan sent Giguere a phony shipping document reflecting that the 1 million 3M 1860 face masks were being shipped to 8th Sense. *See* Exhibit 19.

**Khan's Fraud and Conversion Reveals Itself**

*The Unauthorized 3M Distributors*

45. In February 2021, Khan and Sustenance's fraud and conversion began coming to light. Specifically, after continued delays in delivery of the 1 million model 1860 face masks that were the subject of Purchase Order No. 107 and Invoice No. 33577, Khan revealed that his source was FRF Worldwide, Inc. ("FRF") of Danielsville, Pennsylvania. FRF is not an authorized 3M distributor.

46. Upon contacting FRF directly, 8th Sense was informed that Sustenance had contracted with FRF to purchase large quantities of 3M model 1860 face masks to be delivered to 8th Sense. But that out of the $2,090,000 that 8th Sense had wired to Sustenance for Purchase Order No. 107, only $190,000 actually reached FRF.

47. Khan further revealed that his source for the 300,00 3M 1860 small face masks under Purchase Order No. 105 and Invoice No. 33552 were two other American companies, Prime Health Group and Coordinates PPE LLC—neither of which was an authorized 3M distributor.

*Health Canada Identifies Potential Counterfeit Face Masks*

48. On February 16, 2021, 8th Sense met and communicated with Health Canada, which identified 3M face masks delivered by 8th Sense (through Sustenance) that appeared to be counterfeit.

49. Following its communications with Health Canada, that same day, 8th Sense notified Alberta Health Services that it would be taking back the face masks. More specifically, 8th Sense took back the following product from Alberta Health Services, pending an investigation performed by Health Canada:

- 22,080 units of 3M 1860 Received at AHS on 12/15/20,
- 60,000 Units of 3M 1860S Lot Number B20522 received at AHS on 1/29/21, and
- 83,160 Units of 3M 1860S Lot Number B20522 received at AHS on 2/8/21.

### 3M Confirms Distributor Not Authorized

50.    Two weeks later, on March 1, 2021, 3M's fraud division confirmed to 8th Sense that Sustenance's Asian distributor, which had supplied the face masks delivered to Alberta Health Services, was in fact not an authorized 3M distributor. *See* Exhibit 20.

### Counterfeit Face Masks Confirmed

51.    By letter dated March 29, 2021, Health Canada notified 8th Sense that the face masks were counterfeit as confirmed by the investigation performed in conjunction with 3M, and that all of the counterfeit product would be seized and destroyed. *See* Exhibit 20.

52.    That was a devasting blow to 8th Sense because it resulted in it being banned from doing business with Alberta Health Systems for six months, cancelling all pending orders from Alberta Health Systems, and also barred 8th Sense from doing business with the much larger (and potentially more lucrative) Ottawa Health Service.

### Demands for Refund

53.    Even before receiving that notice from Health Canada, 8th Sense had begun demanding refunds from Sustenance.  Specifically, on February 1, 2021, 8th Sense wrote to Sustenance and demanded that Sustenance refund the following amounts under the following invoices due to its failure to deliver the contracted quantities:

> For the Invoice 33538 of Sustenance, we paid in full and there is still missing 3240 Masks @ $3,40 Total: $11,016

1

2      For the invoice 33550 of Sustenance, we paid in full and there is still

3      missing 22240 Masks @ 3,05 Total: $67,832

4    54.    On February 19, 2021, following a discussion between Giguere and

5    Khan, 8th Sense sent Sustenance three separate demands for refunds based on the

6    counterfeiting, delayed delivery and other misrepresentations.  Specifically:

7      At 2:17 PM, 8th Sense wrote:

8      Regarding the masks bought from your company, it appears, as

9      discussed together, that the masks are not authentic 3M 1860 as sold.

10     We received the notice of return and refund from our Government.

11

12     We asked you to refund the amount paid to your society for these

13     masks due to the situation exposed.

14

15     The documentation received from you and the information[] appeared

16     to be not authentic.

17

18     Under these circumstances, we ask you for a complete refund

19     immediately . . .

20     At 2:44 PM, 8th Sense wrote:

21     Regarding the transaction of 1M masks 1860 that you were suppose[d]

22     to deliver in December 2020, we asked for a refund due to non

23     performance and other reasons.

24

25     We paid you 2,100,000 USD as described below:

26

27     1- 300,000$ USD December 24th

28     2- 300,000$ USD December 29th

3- 150,000USD December 30th

4- 1,340,000 December 31st for a total of 2,090,000USD

We received a tracking link from you we were unable to verify and also we received many dates of delivery that you never respected. From now, we didn't receive anything. With the situation also that you shipped us masks 1860 and 1860S that appeared to be counterfeit, we prefer to request the refund to avoid any more complications.

We also, with your permission, got in communication with the supplier, FRF Worldwide Inc, which is not a distributor as mentioned by you before. Also, Dennis told us that he received an account from you of 190,000$ USD which is10% of the transaction.  . . .

We request refund immediately

At 3:17 PM, 8th Sense wrote:

As per our previous conversations, we request immediate refund of the amount of 945,000$ USD paid in full to your society. The invoice from number from Sustenance is #33552.

The refund is due to multiple documentations received concerning these masks that appeared to be counterfeit also. As you are aware, we received the visit of Health Canada and also the Police Department regarding the authenticity of these masks.

These masks has been shipped to our Canadian Government as you were aware that these masks were bought for them. They warned us about the situation of non authentic 3M masks. We immediately told you about this concern. From our previous doubts, we open[ed] a case

KUTAK ROCK LLP
ATTORNEYS AT LAW
LOS ANGELES

COMPLAINT

1   with 3M Fraud and sent all paperwork[] from this transaction.  All

2   diligence and verifications we are doing at the moment has been

3   disclose to you.

4

5   We are facing a very inconvenient situation now so we would like to

6   have an immediate refund due to these multiple factors explained.

7   We will also request the refund of our costs for the customs and

8   transportation that will be provided by Maxime Cliche

9   admin@8thsense.ca.

10

11   You have been very transparent and told us that you bought these

12   masks from Prime Health Group, represented by Marko DeJan. We are

13   also aware that Prime Health Group bought from Coordinates PPE

14   LLC represented by Cody Alfrey.

15

16   55.    To date, Sustenance and Khan have failed to refund any of the funds

17   owed to 8th Sense.

18   56.    As a consequence of having sold counterfeit product to Alberta Health

19   Systems, albeit unknowing, Health Canada imposed sanctions that bar 8th Sense from

20   doing business with Canadian health systems, for a period of six months.  That

21   resulted in the cancellation of orders with Alberta Health Systems and potential

22   orders with Ottawa Health Systems that would have generated over $1.6 million in

23   profits for 8th Sense.

24                              *Alter Ego Allegations*

25   57.    As between Defendants Khan and Sustenance there exists at all times

26   mentioned herein a unity of interest of ownership between such Defendants such that

27   any individual and separateness between those Defendants have ceased, and that such

28   Sustenance is the alter-ego of Khan so that adherence to the fiction of the separate

1    existence of these Defendants as distinct from each other would permit abuse of the

2    corporate privilege, sanction fraud and promote injustice.

3         58.    Upon information and belief, Sustenance, at all relevant times, was

4    undercapitalized and failed to adhere to corporate formalities.

5         59.    Upon information and belief, belief, Khan used Sustenance funds for his

6    own purposes, exercised complete domination and control over Sustenance, and used

7    his complete domination and control over Sustenance to commit wrongful acts

8    against Plaintiff causing injury to Plaintiff.

9                        **FIRST CAUSE OF ACTION**

10                    **Fraud – Purchase Order No. 107**

11                     **(Against Khan and Sustenance)**

12        60.    Plaintiff repeats and realleges the allegations contained in each of the

13   preceding paragraphs as set forth at length herein.

14        61.    In November and December 2020, Khan and Sustenance falsely

15   represented to 8th Sense that their distributors of 3M face masks and other PPE were

16   authorized by 3M to distribute 3M products.

17        62.    In November and December 2020, Khan and Sustenance falsely

18   represented to 8th Sense that their distributors had 3M face masks that were

19   manufactured in the United States.

20        63.    Khan and Sustenance knew that the foregoing representations were false

21   or had a reckless disregard for their truth.

22        64.    8th Sense reasonably relied upon the foregoing misrepresentations in

23   issuing Purchase Order No. 107 for one million 3M, model 1860, face masks, and

24   wiring $2,090,000 to Sustenance.

25        65.    As a direct and proximate result of the foregoing misrepresentations,

26   and 8th Sense's reliance thereon, 8th Sense sustained damages in the amount of the

27   unreturned funds, as well as consequential damages in the cancellation of contracts

28   and a bar on doing business with Canadian health systems.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## SECOND CAUSE OF ACTION

### Negligent Misrepresentation – Purchase Order No. 107

### (Against Khan and Sustenance)

66.     Plaintiff repeats and realleges the allegations contained in each of the preceding paragraphs as set forth at length herein.

67.     In November and December 2020, Khan and Sustenance falsely represented to 8th Sense that their distributors of 3M face masks and other PPE were authorized by 3M to distribute 3M products.

68.     In November and December 2020, Khan and Sustenance falsely represented to 8th Sense that their distributors had 3M face masks that were manufactured in the United States.

69.     Khan and Sustenance had no reasonable ground for believing that those representations were true, yet intended that 8th Sense reply upon those representations.

70.     8th Sense reasonably relied upon the foregoing misrepresentations in issuing Purchase Order No. 107 for one million 3M, model 1860, face masks, and wiring $2,090,000 to Sustenance.

71.     As a direct and proximate result of the foregoing misrepresentations, and 8th Sense's reliance thereon, 8th Sense sustained damages in the amount of the unreturned funds, as well as consequential damages in the cancellation of contracts and a bar on doing business with Canadian health systems.

## THIRD CAUSE OF ACTION

### Conversion – Purchase Order No. 107

### (Against Khan and Sustenance)

72.     Plaintiff repeats and realleges the allegations contained in each of the preceding paragraphs as set forth at length herein.

73.     In furtherance of Purchase Order No. 107, 8th Sense wired the following amounts on the following dates to an account designated by Khan, for the purchase

of one million 3M series 1860 face masks:

- o   Dec. 24, 2020:         $300,000
- o   Dec. 29, 2020:         $300,000
- o   Dec. 30, 2020:         $150,000
- o   Dec. 31, 2020:         $1,340,000

74.   Unbeknownst to 8th Sense, of the $2,090,000 that 8th Sense had wired to Khan and Sustenance for Purchase Order No. 107, only $190,000 actually reached the distributor, FRF.  The rest was kept by Khan and Sustenance.

75.   On February 19, 2021, after having been informed by FRF that Sustenance had forwarded only $190,000, 8th Sense demanded that Khan and Sustenance refund the $2,090,000 paid by 8th Sense.

76.   In failing to return any of the monies as demanded by 8th Sense, Khan and 8th Sense have exercised dominion and control over those funds and substantially interfered with 8th Sense's right to those funds, without 8th Sense's consent.

77.   As a direct and proximate cause of Defendants' unlawful conduct, Plaintiff has sustained damages.

## FOURTH CAUSE OF ACTION

### Breach of Contract – Purchase Order No. 107

### (Against Khan and Sustenance)

78.   Plaintiff repeats and realleges the allegations contained in each of the preceding paragraphs as set forth at length herein.

79.   On December 23, 2020, 8th Sense issued to Sustenance Purchase Order No 107, dated December 23, 2020, for one million 3M face masks, model 1860, for a purchase price of $2,090,000, and requirements, *inter alia*,  that they are "made in the USA with globally sourced materials", and that "the seller guarantees that each mask is genuine."

80.   Khan and Sustenance, in turn, issued to 8th Sense Invoice No. 33577, dated December 30, 2020, which mirrored the product, quantity and price

descriptions in Purchase Order No. 107 and did not object to or otherwise negate the requirements in Purchase Order No. 107, thereby forming a contract, under the Uniform Commercial Code, as between merchants.

81.    In furtherance of its contractual obligation,  8th Sense wired $2,090,000 to Sustenance during the period December 24 through December 31, 2020, thereby fully performing on the contract.

82.    Khan and Sustenance breached the contract by failing to deliver any of the subject 3M face masks and by failing to return the subject funds after they were demanded by 8th Sense.

83.    As a direct and proximate cause of such breaches, Plaintiff has sustained damages in the amount of the unreturned funds, as well as consequential damages in the cancellation of contracts and a bar on doing business with Canadian health systems.

84.    Sustenance was and is the alter ego and mere instrumentality of Khan.

## FIFTH CAUSE OF ACTION

### Unjust Enrichment – Purchase Order No. 107

### (Against Khan and Sustenance)

85.    Plaintiff repeats and realleges the allegations contained in each of the preceding paragraphs as set forth at length herein.

86.    On December 23, 2020, 8th Sense issued to Sustenance Purchase Order No 107, dated December 23, 2020, for one million 3M face masks, model 1860, for a purchase price of $2,090,000, and requirements, *inter alia*,  that they are "made in the USA with globally sourced materials", and that "the seller guarantees that each mask is genuine."

87.    Khan and Sustenance, in turn, issued to 8th Sense Invoice No. 33577, dated December 30, 2020, which mirrored the product, quantity and price descriptions in Purchase Order No. 107 and did not object to or otherwise negate the requirements in Purchase Order No. 107.

88.     In furtherance of Purchase Order No. 107, 8th Sense wired $2,090,000 to Sustenance during the period December 24 through December 31, 2020, thereby fully performing on its obligation.

89.     By failing to deliver any of the subject 3M face masks and by failing to return the subject funds after they were demanded by 8th Sense, Khan and Sustenance have been unjustly enriched to Plaintiff's detriment.

90.     Sustenance was and is the alter ego and mere instrumentality of Khan.

## SIXTH CAUSE OF ACTION

### Fraud – Purchase Order No. 102

### (Against Khan and Sustenance)

91.     Plaintiff repeats and realleges the allegations contained in each of the preceding paragraphs as set forth at length herein.

92.     In November 2020, Khan and Sustenance falsely represented to 8th Sense that their distributors of 3M face masks and other PPE were authorized by 3M to distribute 3M products.

93.     In November 2020, Khan and Sustenance falsely represented to 8th Sense that  the 3M face masks and other PPE that his sources distributed were manufactured by 3M in the United States.  For example, on November 17, 2020, Khan sent a message confirming that 3M's model 1860 face masks were made in the United States.

94.     On November 20, 2020, in response to Giguere's request for a video showing the actual boxes of 3M face masks and an indication that they were for 8th Sense, Khan provided a video showing a sign with Giguere's first name, "Nicolas" next to words "8th Sense", with what appeared to be boxes of 3M face masks in the background.

95.     Khan and Sustenance knew that the foregoing representations were false or had a reckless disregard for their truth.

96.     8th Sense reasonably relied upon the foregoing misrepresentations in

issuing Purchase Order No. 102 for 40,000, model 1860, face masks, and wiring $136,000 to Sustenance.

97.     As a direct and proximate result of the foregoing misrepresentations, and 8th Sense's reliance thereon, 8th Sense sustained damages in the amount of the unreturned funds, as well as consequential damages in the cancellation of contracts and a bar on doing business with Canadian health systems.

## SEVENTH CAUSE OF ACTION

### Negligent Misrepresentation – Purchase Order No. 102

### (Against Khan and Sustenance)

98.     Plaintiff repeats and realleges the allegations contained in each of the preceding paragraphs as set forth at length herein.

99.     In November 2020, Khan and Sustenance falsely represented to 8th Sense that their distributors of 3M face masks and other PPE were authorized by 3M to distribute 3M products.

100.     In November 2020, Khan and Sustenance falsely represented to 8th Sense that  the 3M face masks and other PPE that his sources distributed were manufactured by 3M in the United States.  For example, on November 17, 2020, Khan sent a message confirming that 3M's model 1860 face masks were made in the United States.

101.     On November 20, 2020, in response to Giguere's request for a video showing the actual boxes of 3M face masks and an indication that they were for 8th Sense, Khan provided a video showing a sign with Giguere's first name, "Nicolas" next to words "8th Sense", with what appeared to be boxes of 3M face masks in the background.

102.     Khan and Sustenance had no reason to believe that the foregoing representations were true, yet intended for 8th Sense to rely upon them.

103.     8th Sense relied upon the foregoing misrepresentations in issuing Purchase Order No. 102 for 40,000, model 1860, face masks, and wiring $136,000

to Sustenance.

104.   As a direct and proximate result of the foregoing misrepresentations, and 8th Sense's reliance thereon, 8th Sense sustained damages in the amount of the unreturned funds, as well as consequential damages in the cancellation of contracts and a bar on doing business with Canadian health systems.

## EIGHTH CAUSE OF ACTION

### Conversion – Purchase Order No. 102

### (Against Khan and Sustenance)

105.   Plaintiff repeats and realleges the allegations contained in each of the preceding paragraphs as set forth at length herein.

106.   In furtherance of Purchase Order No. 102, 8th Sense wired $136,000  to an account designated by Khan, for the purchase of 40,000 3M series 1860 face masks.

107.   On February 16, 2021, 8th Sense was informed by Health Canada that the face masks delivered to Alberta Health Service (through Sustenance) may be counterfeit. In fact, the face masks were later determined to be counterfeit and, consequently, were seized and destroyed.

108.   On February 19, 2021, after having been informed by Health Canada that face masks delivered to Alberta Health Services may be counterfeit, 8th Sense demanded that Khan and Sustenance refund the $136,000 paid by 8th Sense.

109.   In failing to return any of the monies as demanded by 8th Sense, Khan and 8th Sense have exercised dominion and control over those funds and substantially interfered with 8th Sense's right to those funds, without 8th Sense's consent.

110.   As a direct and proximate cause of Defendants' unlawful conduct, Plaintiff has sustained damages.

/ / /

/ / /

/ / /

### NINTH CAUSE OF ACTION

### Breach of Contract – Purchase Order No. 102

### (Against Khan and Sustenance)

111.   Plaintiff repeats and realleges the allegations contained in each of the preceding paragraphs as set forth at length herein.

112.   On November 17, 2020, 8th Sense issued to Sustenance Purchase Order No 102, dated November 17, 2020, for 40,000 3M face masks, model 1860, for a purchase price of $136,000, and requirements, *inter alia*, that they are "made in the USA with globally sourced materials", and that "the seller guarantees that each mask is genuine."

113.   Sustenance, in turn, issued to 8th Sense Invoice No. 33538, dated November 17, 2020, which mirrored the product, quantity and price descriptions in Purchase Order No. 102 and did not object to or otherwise negate the requirements in Purchase Order No. 102, thereby forming a contract, under the Uniform Commercial Code, as between merchants.

114.   In furtherance of its contractual obligation,  8th Sense wired $136,000 to Sustenance November 18, 2020, thereby fully performing on the contract.

115.   Khan and Sustenance breached the contract by delivering counterfeit face masks that were rejected by Health Canada and Alberta Health Services.

116.   As a direct and proximate cause of such breaches, Plaintiff has sustained damages in the amount of the unreturned funds, as well as consequential damages in the cancellation of contracts and a bar on doing business with Canadian health systems.

117.   Sustenance was and is the alter ego and mere instrumentality of Khan.

### TENTH CAUSE OF ACTION

### Unjust Enrichment – Purchase Order No. 102

### (Against Khan and Sustenance)

118.   Plaintiff repeats and realleges the allegations contained in each of the

preceding paragraphs as set forth at length herein.

119.   On November 17, 2020, 8th Sense issued to Sustenance Purchase Order No 102, dated November 17, 2020, for 40,000 3M face masks, model 1860, for a purchase price of $136,000, and requirements, inter alia,  that they are "made in the USA with globally sourced materials", and that "the seller guarantees that each mask is genuine."

120.   Khan and Sustenance, in turn, issued to 8th Sense Invoice No. 33538, dated November 17, 2020, which mirrored the product, quantity and price descriptions in Purchase Order No. 102 and did not object to or otherwise negate the requirements in Purchase Order No. 102.

121.   In furtherance of Purchase Order No.102,  8th Sense wired $136,000 to Sustenance November 18, 2020, thereby fully performing its obligation.

122.   By delivering counterfeit face masks and by failing to return the subject funds after they were demanded by 8th Sense, Khan and Sustenance have been unjustly enriched to Plaintiff's detriment.

123.   Sustenance was and is the alter ego and mere instrumentality of Khan.

## ELEVENTH CAUSE OF ACTION

### Fraud – Purchase Order No. 105

### (Against Khan and Sustenance)

124.   Plaintiff repeats and realleges the allegations contained in each of the preceding paragraphs as set forth at length herein.

125.   In November 2020, Khan and Sustenance falsely represented to 8th Sense that their distributors of 3M face masks and other PPE were authorized by 3M to distribute 3M products.

126.   In November 2020, Khan and Sustenance falsely represented to 8th Sense that  the 3M face masks and other PPE that his sources distributed were manufactured by 3M in the United States.  For example, on November 17, 2020, Khan sent a message confirming that 3M's model 1860 face masks were made in the

United States.

127.   On November 20, 2020, in response to Giguere's request for a video showing the actual boxes of 3M face masks and an indication that they were for 8th Sense, Khan provided a video showing a sign with Giguere's first name, "Nicolas" next to words "8th Sense", with what appeared to be boxes of 3M face masks in the background.

128.   Khan and Sustenance knew that the foregoing representations were false or had a reckless disregard for their truth.

129.   8th Sense reasonably relied upon the foregoing misrepresentations in issuing Purchase Order No. 105 for 300,000, model 1860 small, face masks, and wiring $935,000 to Sustenance.

130.   As a direct and proximate result of the foregoing misrepresentations, and 8th Sense's reliance thereon, 8th Sense sustained damages in the amount of the unreturned funds, as well as consequential damages in the cancellation of contracts and a bar on doing business with Canadian health systems.

## TWELFTH CAUSE OF ACTION

### Negligent Misrepresentation – Purchase Order No. 105

### (Against Khan and Sustenance)

131.   Plaintiff repeats and realleges the allegations contained in each of the preceding paragraphs as set forth at length herein.

132.   In November 2020, Khan and Sustenance falsely represented to 8th Sense that their distributors of 3M face masks and other PPE were authorized by 3M to distribute 3M products.

133.   In November 2020, Khan and Sustenance falsely represented to 8th Sense that  the 3M face masks and other PPE that his sources distributed were manufactured by 3M in the United States.  For example, on November 17, 2020, Khan sent a message confirming that 3M's model 1860 face masks were made in the United States.

134.   On November 20, 2020, in response to Giguere's request for a video showing the actual boxes of 3M face masks and an indication that they were for 8th Sense, Khan provided a video showing a sign with Giguere's first name, "Nicolas" next to words "8th Sense", with what appeared to be boxes of 3M face masks in the background.

135.   Khan and Sustenance had no reason to believe that the foregoing representations were true, yet intended for 8th Sense to reply upon those representations.

136.   8th Sense relied upon the foregoing misrepresentations in issuing Purchase Order No. 105 for 300,000, model 1860 small, face masks, and wiring $935,000 to Sustenance.

137.   As a direct and proximate result of the foregoing misrepresentations, and 8th Sense's reliance thereon, 8th Sense sustained damages in the amount of the unreturned funds, as well as consequential damages in the cancellation of contracts and a bar on doing business with Canadian health systems.

## THIRTEENTH CAUSE OF ACTION

### Conversion – Purchase Order No. 105

### (Against Khan and Sustenance)

138.   Plaintiff repeats and realleges the allegations contained in each of the preceding paragraphs as set forth at length herein.

139.   In furtherance of Purchase Order No. 105, 8th Sense wired $935,000 to an account designated by Khan, for the purchase of 300,000 3M series 1860 small face masks.

140.   Defendants failed to deliver any of the face masks under Purchase Order No. 105.

141.   On February 16, 2021, 8th Sense was informed by Health Canada that certain face masks delivered to Alberta Health Service (through Sustenance) may be counterfeit. In fact, those face masks were later determined to be counterfeit and,

consequently, were seized and destroyed.

142.   On February 19, 2021, after having been informed by Health Canada that certain face masks delivered to Alberta Health Services may be counterfeit, 8th Sense cancelled Purchase Order No. 105 and demanded that Khan and Sustenance refund the $935,000 paid by 8th Sense.

143.   In failing to return any of the monies as demanded by 8th Sense, Khan and 8th Sense have exercised dominion and control over those funds and substantially interfered with 8th Sense's right to those funds, without 8th Sense's consent.

144.   As a direct and proximate cause of Defendants' unlawful conduct, Plaintiff has sustained damages.

## FOURTEENTH CAUSE OF ACTION

### Breach of Contract – Purchase Order No. 105

### (Against Khan and Sustenance)

145.   Plaintiff repeats and realleges the allegations contained in each of the preceding paragraphs as set forth at length herein.

146.   8th Sense issued to Sustenance Purchase Order No 102, dated November 25, 2020, for 300,000 3M face masks, model 1860 small, for a purchase price of $825,000, and requirements, *inter alia*, that they are "made in the USA with globally sourced materials", and that "the seller guarantees that each mask is genuine."

147.   Khan and Sustenance, in turn, issued to 8th Sense Invoice No. 33552, dated November 25, 2020, that (mistakenly) priced the 300,000 3M face masks, model 1860 small, at $945,000, but did not object to or otherwise negate the requirements in Purchase Order No. 105.

148.   In accordance with Invoice No. 33552,   8th Sense subsequently wired $935,000 to Sustenance, thereby creating a contract, under the Uniform Commercial Code, as between merchants, and performing on the contract.

149.   On February 19, 2021, after having been informed by Health Canada that certain face masks delivered to Alberta Health Services may be counterfeit, 8th

KUTAK ROCK LLP
ATTORNEYS AT LAW
LOS ANGELES

Sense cancelled the contract and demanded that Khan and Sustenance refund the $935,000 paid by 8th Sense.

150.   Khan and Sustenance breached the contract by failing to deliver and of the face masks under that contract.

151.   As a direct and proximate cause of such breach, Plaintiff has sustained damages in the amount of the unreturned funds, as well as consequential damages in the cancellation of contracts and a bar on doing business with Canadian health systems.

152.   Sustenance was and is the alter ego and mere instrumentality of Khan.

## FIFTEENTH CAUSE OF ACTION

### Unjust Enrichment – Purchase Order No. 105

### (Against Khan and Sustenance)

153.   Plaintiff repeats and realleges the allegations contained in each of the preceding paragraphs as set forth at length herein.

154.   8th Sense issued to Sustenance Purchase Order No 102, dated November 25, 2020, for 300,000 3M face masks, model 1860 small, for a purchase price of $825,000, and requirements, *inter alia,* that they are "made in the USA with globally sourced materials", and that "the seller guarantees that each mask is genuine."

155.   Khan and Sustenance, in turn, issued to 8th Sense Invoice No. 33552, dated November 25, 2020, that (mistakenly) priced the 300,000 3M face masks, model 1860 small, at $945,000, but did not object to or otherwise negate the requirements in Purchase Order No. 105.

156.   In accordance with Invoice No. 33552,   8th Sense subsequently wired $935,000 to Sustenance, 2020, thereby fully performing its obligation.

157.   On February 19, 2021, after having been informed by Health Canada that certain face masks delivered to Alberta Health Services may be counterfeit, 8th Sense cancelled the contract and demanded that Khan and Sustenance refund the $935,000 paid by 8th Sense.

158.   By failing to deliver the subject face masks and by failing to return the subject funds after they were demanded by 8th Sense, Khan and Sustenance have been unjustly enriched to Plaintiff's detriment.

159.   Sustenance was and is the alter ego and mere instrumentality of Khan.

## SIXTEENTH CAUSE OF ACTION

### Fraud – Purchase Order No. 103

### (Against Khan and Sustenance)

160.   Plaintiff repeats and realleges the allegations contained in each of the preceding paragraphs as set forth at length herein.

161.   In November 2020, Khan and Sustenance falsely represented to 8th Sense That their distributors of 3M face masks and other PPE were authorized by 3M to distribute 3M products.

162.   In November 2020, Khan and Sustenance falsely represented to 8th Sense that  the 3M face masks and other PPE that his sources distributed were manufactured by 3M in the United States.  For example, on November 17, 2020, Khan sent a message confirming that 3M's model 1860 face masks were made in the United States.

163.   On November 20, 2020, in response to Giguere's request for a video showing the actual boxes of 3M face masks and an indication that they were for 8th Sense, Khan provided a video showing a sign with Giguere's first name, "Nicolas" next to words "8th Sense", with what appeared to be boxes of 3M face masks in the background.

164.   Khan and Sustenance knew that the foregoing representations were false or had a reckless disregard for their truth.

165.   8th Sense reasonably relied upon the foregoing misrepresentations in issuing Purchase Order No. 103 for 47,840, model 8210, face masks, and wiring $145,912,000 to Sustenance.

166.   As a direct and proximate result of the foregoing misrepresentations,

and 8th Sense's reliance thereon, 8th Sense sustained damages in the amount of the unreturned funds, as well as consequential damages in the cancellation of contracts and a bar on doing business with Canadian health systems.

## SEVENTEENTH CAUSE OF ACTION

### Negligent Misrepresentation – Purchase Order No. 103

### (Against Khan and Sustenance)

167.   Plaintiff repeats and realleges the allegations contained in each of the preceding paragraphs as set forth at length herein.

168.   In November 2020, Khan and Sustenance falsely represented to 8th Sense That their distributors of 3M face masks and other PPE were authorized by 3M to distribute 3M products.

169.   In November 2020, Khan and Sustenance falsely represented to 8th Sense that  the 3M face masks and other PPE that his sources distributed were manufactured by 3M in the United States.  For example, on November 17, 2020, Khan sent a message confirming that 3M's model 1860 face masks were made in the United States.

170.   On November 20, 2020, in response to Giguere's request for a video showing the actual boxes of 3M face masks and an indication that they were for 8th Sense, Khan provided a video showing a sign with Giguere's first name, "Nicolas" next to words "8th Sense", with what appeared to be boxes of 3M face masks in the background.

171.   Khan and Sustenance had no reason to believe that the foregoing Representations were true, yet intended for 8th Sense to rely upon those representations.

172.   8th Sense relied upon the foregoing misrepresentations in issuing Purchase Order No. 103 for 47,840, model 8210, face masks, and wiring $145,912,000 to Sustenance.

173.   As a direct and proximate result of the foregoing misrepresentations,

and 8th Sense's reliance thereon, 8th Sense sustained damages in the amount of the unreturned funds, as well as consequential damages in the cancellation of contracts and a bar on doing business with Canadian health systems.

## EIGHTEENTH CAUSE OF ACTION

### Conversion – Purchase Order No. 103

### (Against Khan and Sustenance)

174.   Plaintiff repeats and realleges the allegations contained in each of the preceding paragraphs as set forth at length herein.

175.   In furtherance of Purchase Order No. 103, 8th Sense wired $145,912 to an account designated by Khan, for the purchase of 47,840 3M series 8210 face masks.

176.   Defendants failed to deliver 22,240 of the face masks under Purchase Order No. 103.

177.   Consequently, on February 2, 2021, 8th Sense demanded that Sustenance refund $67,832 of the $145,912 paid.

178.   In failing to return any of the monies as demanded by 8th Sense, Khan and 8th Sense have exercised dominion and control over those funds and substantially interfered with 8th Sense's right to those funds, without 8th Sense's consent.

179.   As a direct and proximate cause of Defendants' unlawful conduct, Plaintiff has sustained damages.

## NINETEENTH CAUSE OF ACTION

### Breach of Contract – Purchase Order No. 103

### (Against Khan and Sustenance)

180.   Plaintiff repeats and realleges the allegations contained in each of the preceding paragraphs as set forth at length herein.

181.   8th Sense issued to Sustenance Purchase Order No 103, dated November 25, 2020, for 47,840 3M series 8210 face masks, for a purchase price of

$145,912, and requirements, *inter alia*, that they are "made in the USA with globally sourced materials", and that "the seller guarantees that each mask is genuine."

182.   Khan and Sustenance, in turn, issued to 8th Sense  Invoice No. 33550, dated November 25,  2020, which mirrored the product, quantity and price descriptions in Purchase Order No. 103 and did not object to or otherwise negate the requirements in Purchase Order No. 103, thereby forming a contract, under the Uniform Commercial Code, as between merchants.

183.   In furtherance of its contractual obligation, on November 27, 2020, 8th Sense wired  $145,912 to an account designated by Sustenance, thereby performing on the contract.

184.   On December 3, 2020, Sustenance delivered 25,600 3M model 8210 face masks.  But because Sustenance failed to deliver the other 22,240 face masks that 8th Sense had paid for, on February 2, 2021, 8th Sense demanded that Sustenance refund $67, 832 of the $146, 912 paid.

185.   To date, Sustenance has failed to refund any of the $67,832 demanded.

186.   Khan and Sustenance breached the contract by failing to deliver 22,240 face masks that 8th Sense had paid and of the face masks under that contract and then failing to refund the $67,832 demanded.

187.   As a direct and proximate cause of such breach, Plaintiff has sustained damages in the amount of the unreturned funds, as well as consequential damages in the cancellation of contracts and a bar on doing business with Canadian health systems.

188.   Sustenance was and is the alter ego and mere instrumentality of Khan.

## TWENTIETH CAUSE OF ACTION

### Unjust Enrichment – Purchase Order No. 103

### (Against Sustenance)

189.   Plaintiff repeats and realleges the allegations contained in each of the preceding paragraphs as set forth at length herein.

190.   8th Sense issued to Sustenance Purchase Order No 103, dated November 25, 2020, for 47,840 3M series 8210 face masks, for a purchase price of $145,912, and requirements, inter alia,  that they are "made in the USA with globally sourced materials", and that "the seller guarantees that each mask is genuine."

191.   Khan and Sustenance, in turn, issued to 8th Sense  Invoice No. 33550, dated November 25,  2020, which mirrored the product, quantity and price descriptions in Purchase Order No. 103 and did not object to or otherwise negate the requirements in Purchase Order No. 103.

192.   In accordance with Invoice No. 33550,   8th Sense subsequently wired $145,912 to Sustenance, 2020, thereby fully performing its obligation.

193.   By failing to deliver 22,240 face masks that 8th Sense had paid for and then failing to refund the $67,832 demanded by 8th Sense, Khan and Sustenance have been unjustly enriched to Plaintiff's detriment.

194.   Sustenance was and is the alter ego and mere instrumentality of Khan.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief and judgment against Defendants Khan and Sustenance as follows:

1.      For compensatory, actual, consequential and special damages;

2.      For punitive damages commensurate with the egregious nature of Khan's and Sustenance's wrongdoing, in an amount sufficient to punish and dissuade;

3.      For interest and counsel fees; and

4.      For any and all such other relief that this Court deems just and equitable.

## **JURY TRIAL DEMAND**

Plaintiff demands a trial by jury for all claims asserted in this Complaint so triable.

/ / /

/ / /

1    Dated: February 25, 2022                    KUTAK ROCK LLP

2

3                                                By:/s/ *Saundra Wootton*

4                                                    Saundra Wootton
                                                     Attorneys for Plaintiff
5                                                    8th SENSE, INC.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT "1"



# EXHIBIT "2"



# EXHIBIT "3"



# PURCHASE ORDER

| | |
|---|---|
| **NUMBER** | 102 |

8th Sense Inc
217-650 Rue Graham Bell, Quebec,QC,
Canada, G1N 4H5
1-888-411-6956
Admin@8thsense.ca

| | |
|---|---|
| **DATE** | 2020-11-17 |

**Supplier information:**
**Sustenance Inc**
**3940 Broad Street Suite #7461**
**San Luis Obispo, CA 93401 US**

Mr. Alex M. Khan
**1-800-880-6391**

| Client Number | CURRENCY | SHIPPING | TERMS | LOCATION | |
|---|---|---|---|---|---|
| SUSTENANCE | USD | Ground | FOB | CA | |

| Article | Description of Item | Quantity | Unit of measurement | COST | TOTAL COST |
|---|---|---|---|---|---|
| | | | | | |
| 3M-1860 | N95 Respirator | 40000,00 | 1 Individual Mask | 3,40  $ | 136 000,00  $ |
| | | | | | |
| | | | | | |
| | | | | **TOTAL COST (USD)** | **136 000,00  $** |

3M - 1860 N95 respirator
Size : Standard 3M-1860 N95 respirator size
NIOSH APPROVED N95
OFFERS > 99% BFE (Bacterial Filtration Efficiency) according to ASTM F2101 .
Meets Canadian and Us CDC guidelines for Mycobacterium tuberculosis exposure control
Fluid-resistant according to ASTM F1859
Made in the USA with globally sourced materials.
The seller guarantees that each mask is genuine

Signed By:

**EXHIBIT "3" PAGE 38 OF 90**

# EXHIBIT "4"

**Sustenance Inc.**
3940 Broad Street Suite # 7461
San Luis Obispo, CA  93401 US
800.880.6391

**Invoice**



Sustenance Inc.

8th Sense Inc
8th Sense Inc
217-650 Rue Grahm-Bell
Quebec Quebec  G1N-4H5
Canada

| 33538 | 11/17/2020 | $75,480.00 | 11/17/2020 | Due on receipt |
|-------|-----------|-----------|-----------|----------------|

| PPE PRODUCTS:3M 1860s Health Care Particulate Respirator. | 22,200 | 3.40 | 75,480.00 |
|---|---|---|---|

JP Morgan Chase
Sustenance Inc.
Routing# 322271627
Account# 988830444

**BALANCE DUE**        **$75,480.00**

**EXHIBIT "4" PAGE 40 OF 90**

# EXHIBIT "5"



# PURCHASE ORDER

| | |
|---|---|
| **NUMBER** | 103 |
| **DATE** | 2020-11-25 |

8th Sense Inc
217-650 Rue Graham Bell, Quebec,QC,
Canada, G1N 4H5
1-888-411-6956
Admin@8thsense.ca

**Supplier information:**
**Sustenance Inc**
**3940 Broad Street Suite #7461**
**San Luis Obispo, CA 93401 US**

Mr. Alex M. Khan
**1-800-880-6391**

| Client Number | CURRENCY | SHIPPING | TERMS | LOCATION | |
|---|---|---|---|---|---|
| SUSTENANCE | USD | Ground | FOB | Colorado | |

| Article | Description of Item | Quantity | Unit of measurement | COST | TOTAL COST |
|---|---|---|---|---|---|
| | | | | | |
| 3M-8210 | N95 Respirator | 47840,00 | 1 Individual Mask | 3,05 $ | 145 912,00 $ |
| | | | | | |
| | | | | | |
| | | | | **TOTAL COST (USD)** | 145 912,00 $ |

3M - 8210 N95 respirator
Size : Standard 3M-8210 N95 respirator size
Certification: FDA,CE,NIOSH APPROVED N95, ASTM F1859, OFFERS > 95% BFE according to ASTM
F2101 . Meets NIOSH 42 CFR 84 N95 requirements for a minimum 95% filtration efficiency against
solid and liquid aerosols that do not contain oil.
Made in the USA with globally sourced materials.

Signed By:

**EXHIBIT "5" PAGE 42 OF 90**

EXHIBIT "5" PAGE 43 OF 90

# EXHIBIT "6"

**Sustenance Inc.**
3940 Broad Street Suite # 7461
San Luis Obispo, CA  93401 US
800.880.6391

# Invoice


Sustenance Inc.

8th Sense Inc
8th Sense Inc
217-650 Rue Grahm-Bell
Quebec Quebec  G1N-4H5
Canada

| 33550 | 11/25/2020 | $145,912.00 | 12/25/2020 | Net 30 | |
|---|---|---|---|---|---|

| | | | |
|---|---|---|---|
| **PPE PRODUCTS:3M 8210**<br>Particulate Respirator | 47,840 | 3.05 | 145,912.00 |

Wiring Instruction
JP Morgan Chase
Sustenance Inc
Routing # 322271627
Account# 988830444

BALANCE DUE      **$145,912.00**

# EXHIBIT "7"



# PURCHASE ORDER

**NUMBER**          105

8th Sense Inc
217-650 Rue Graham Bell, Quebec,QC,
Canada, G1N 4H5
1-888-411-6956
Admin@8thsense.ca

**DATE**          2020-11-25

---

**Supplier information:**
**Sustenance Inc**
**3940 Broad Street Suite #7461**
**San Luis Obispo, CA 93401 US**

Mr Alex M. Khan
**1-800-880-6391**

| Client Number | CURRENCY | SHIPPING | TERMS | LOCATION | |
|---|---|---|---|---|---|
| SUSTENANCE | USD | Ground | CIF | Quebec,CA | |

| Article | Description of Item | | Quantity | Unit of measurement | COST | TOTAL COST |
|---|---|---|---|---|---|---|
| | | | | | | |
| 3M-1860S | N95 Respirator | | 300000,00 | 1 Individual Mask | 2,75 $ | 825 000,00 $ |
| | | | | | | |
| | | | | | - $ | |
| | | | | TOTAL COST (USD) | | 825 000,00 $ |
| 3M - 1860S N95 respirator | | | | | | |
| Size : Standard 3M 1860S N95 respirator size | | | | | | |
| NIOSH Approved: N95 | | | | | | |
| OFFERS > 99% BFE (Bacterial Filtration Efficiency) according to ASTM F2101 | | | | | | |
| Meets Canadian and US CDC guidelines for Mycobacterium tuberculosis exposure control | | | | | | |
| Fluid-resistant according to ASTM F1859 | | | | | | |
| Made in the USA with globally sourced materials. | | | | | | |
| The seller guarantees that each mask is genuine | | | | | | |
| | | | | | | |

Signed By:

# EXHIBIT "8"

**Sustenance Inc.**
3940 Broad Street Suite # 7461
San Luis Obispo, CA  93401 US
800.880.6391

# Invoice



Sustenance Inc.

8th Sense Inc
8th Sense Inc
217-650 Rue Grahm-Bell
Quebec Quebec  G1N-4H5
Canada

| 33552 | 11/26/2020 | $945,000.00 | 11/26/2020 | Due on receipt | |
|---|---|---|---|---|---|

| | | | |
|---|---|---|---|
| **PPE PRODUCTS:3M 1860s**<br>Health Care Particulate Respiraator and Surgical Mask | 150,000 | 3.20 | 480,000.00 |
| **PPE PRODUCTS:3M 1860**<br>Health Care Particulate Respirator and Surgical Mask | 150,000 | 3.10 | 465,000.00 |

Wiring Instruction
JP Morgan Chase
Sustenance Inc
Routing # 322271627
Account# 988830444

BALANCE DUE                    **$945,000.00**

**EXHIBIT "8" PAGE 49 OF 90**

# EXHIBIT "9"



# EXHIBIT "10"

10:35

< 24    Alessandro Mogul...    📹  📞

Probably the 1M I will let u know in 2 hrs

**Wed, Dec 2**    3:00 PM

What is ready next week?
3:00 PM ✓✓

Call u after I get done with 3M attorney
3:00 PM

↖ Missed voice call at 4:15 PM

We can pick up today the 25k
4:36 PM ✓✓



4:48 PM

Check your email    5:56 PM

Got it sent to Max    6:08 PM ✓✓

+    🖊    📷  🎤

# EXHIBIT "11"



# EXHIBIT "12"

10:48

< 25   **Alessandro Mogul...**

Missed voice call at 2:39 PM

Missed voice call at 2:56 PM

Call me   3:36 PM ✓✓

Alex need the sgs urgent for the first lot 1860 and also the lot for the 8210 25k delivered from Denver   8:20 PM ✓✓



NIOSH Approved: N95
At least 95% filtration efficiency against solid and liquid aerosols that do not contain oil.

📄 pdf   Certificates_3M.pdf

13 pages · 2.3 MB · pdf   9:56 PM

This for the 1860 I buy from the distributor   10:35 PM

Wed, Dec 9

Missed voice call at 9:37 AM

Wake up Nicolas   9:46 AM

# EXHIBIT "13"

# NIOSH Approved: N95

**At least 95% filtration efficiency against solid and liquid aerosols that do not contain oil.**



3 M
ST. PAUL, MN, USA
1-800-243-4630



THIS RESPIRATOR IS APPROVED ONLY IN THE FOLLOWING CONFIGURATION:

| TC- | Protection | Respirator | | Cautions and Limitations |
|---|---|---|---|---|
| | | 1860 | 1860S | |
| 84A-0006 | N95 | X | X | ABCJMNOP |

1. **PROTECTION**

   **N95 – Particulate Filter** (95% filter efficiency
   level) effective against particulate aerosols
   free of oil; time use restrictions may apply

2. **CAUTIONS AND LIMITATIONS**

   A - Not for use in atmospheres containing less than 19.5 percent oxygen.
   B - Not for use in atmospheres immediately dangerous to life or health.
   C - Do not exceed maximum use concentrations established by regulatory standards.
   J - Failure to properly use and maintain this product could result in injury or death.
   M - All approved respirators shall be selected, fitted, used, and maintained in accordance with MSHA, OSHA, and other applicable regulations.
   N - Never substitute, modify, add, or omit parts.  Use only exact replacement parts in the configuration as specified by the manufacturer.
   O - Refer to user's instructions, and/or maintenance manuals for information on use and maintenance of these respirators.
   P - NIOSH does not evaluate respirators for use as surgical masks.

This respirator contains no components made from natural rubber latex.

**FOR MORE INFORMATION** and assistance on 3M occupational health and environmental safety products, contact your local 3M representative or call 3M OH&ESD Technical Service toll free in U.S.A., 1-800-243-4630.  In Canada, call Technical Service at 1-800-267-4414.

**Exported by/Exporté par/Exportado por:**
**3M Occupational Health and Environmental**
**Safety Division**
3M Center, Building 235-2W-70
P.O. Box 33010
St. Paul, MN 55133-3010

Made in U.S.A.
©3M 2002

38-9017-7547-8

**EXHIBIT "13" PAGE 59 OF 90**

**FDA** | **U.S. FOOD & DRUG**
**ADMINISTRATION**

FDA Home[3] Medical Devices[4] Databases[5]

## 510(k) Premarket Notification

510(k)[7] DeNovo[8] Registration Adverse  Recalls[11] PMA[12] HDE[13] Classification[14] Standards[15]
[6]                      | & Listing[9] Events[10]
CFR Title  Radiation-Emitting  X-Ray  Medsun  CLIA[20] TPLC[21]
21[16]  Products[17]  Assembler[18]  Reports[19]

New Search                                                    Back To Search Results

| | |
|---|---|
| Device Classification Name | Mask, Surgical[22] |
| 510(K) Number | K955382 |
| Device Name | 3M MODEL 1860 HEALTH CARE PARTICULATE RESPIRATOR TYPE N95 |
| Applicant | 3M COMPANY |
| | BUILDINGS 251-3 AND 270 |
| | St. Paul, MN 55144 -1000 |
| Applicant Contact | Dorothea Von Busch |
| Correspondent | 3M COMPANY |
| | BUILDINGS 251-3 AND 270 |
| | St. Paul, MN 55144 -1000 |
| Correspondent Contact | Dorothea Von Busch |
| Regulation Number | 878.4040[23] |
| Classification Product Code | FXX[24] |
| Date Received | 11/24/1995 |
| Decision Date | 05/01/1996 |
| Decision | Substantially Equivalent (SESE) |
| Regulation Medical Specialty | General & Plastic Surgery |
| 510k Review Panel | General Hospital |
| Summary | Summary[25] |
| Type | Traditional |
| Reviewed By Third Party | No |
| Combination Product | No |

**Links on this page:**

1. http://www.addthis.com/bookmark.php?u508=true&v=152&username=fdamain
2. http://www.addthis.com/bookmark.php
3. https://www.fda.gov/
4. https://www.fda.gov/Medical-Devices
5. https://www.fda.gov/medical-devices/device-advice-comprehensive-regulatory-assistance/medical-device-databases
6. /scripts/cdrh/devicesatfda/index.cfm
7. /scripts/cdrh/cfdocs/cfPMN/pmn.cfm
8. /scripts/cdrh/cfdocs/cfpmn/denovo.cfm
9. /scripts/cdrh/cfdocs/cfRL/rl.cfm
10. /scripts/cdrh/cfdocs/cfMAUDE/TextSearch.cfm
11. /scripts/cdrh/cfdocs/cfRES/res.cfm
12. /scripts/cdrh/cfdocs/cfPMA/pma.cfm
13. /scripts/cdrh/cfdocs/cfHDE/hde.cfm

**EXHIBIT "13" PAGE 60 OF 90**

14. /scripts/cdrh/cfdocs/cfPCD/classification.cfm

15. /scripts/cdrh/cfdocs/cfStandards/search.cfm

16. /scripts/cdrh/cfdocs/cfCFR/CFRSearch.cfm

17. /scripts/cdrh/cfdocs/cfPCD_RH/classification.cfm

18. /scripts/cdrh/cfdocs/cfAssem/assembler.cfm

19. /scripts/cdrh/cfdocs/Medsun/searchReportText.cfm

20. /scripts/cdrh/cfdocs/cfClia/Search.cfm

21. /scripts/cdrh/cfdocs/cfTPLC/tplc.cfm

22. /scripts/cdrh/cfdocs/cfpcd/classification.cfm?start_search=1&productcode=FXX

23. /scripts/cdrh/cfdocs/cfcfr/cfrsearch.cfm?fr=878.4040

24. /scripts/cdrh/cfdocs/cfpcd/classification.cfm?start_search=1&productcode=FXX

25. http://www.accessdata.fda.gov/cdrh_docs/pdf/K955382.pdf

Page Last Updated: 07/06/2020

Note: If you need help accessing information in different file formats, see Instructions for Downloading Viewers and Players.

Language Assistance Available: Español | 繁體中文 | Tiếng Việt | 한국어 | Tagalog | Русский | العربية | Kreyòl Ayisyen | Français | Polski | Português | Italiano | Deutsch | 日本語 | فارسی | English

Accessibility  Contact FDA  Careers  FDA Basics  FOIA  No FEAR Act  Nondiscrimination  Website Policies



U.S. Food and Drug Administration
10903 New Hampshire Avenue
Silver Spring, MD 20993
Ph. 1-888-INFO-FDA (1-888-463-6332)
Contact FDA



For Government  For Press

Combination Products  Advisory Committees  Science & Research  Regulatory Information  Safety  Emergency Preparedness  International Programs  News & Events  Training and Continuing Education  Inspections/Compliance  State & Local Officials  Consumers  Industry  Health Professionals  FDA Archive

U.S. Department of **Health & Human Services**

---

Links on this page:

1. http://www.addthis.com/bookmark.php?u508=true&v=152&username=fdamain

2. http://www.addthis.com/bookmark.php

3. https://www.fda.gov/

4. https://www.fda.gov/Medical-Devices

5. https://www.fda.gov/medical-devices/device-advice-comprehensive-regulatory-assistance/medical-device-databases

6. /scripts/cdrh/devicesatfda/index.cfm

7. /scripts/cdrh/cfdocs/cfPMN/pmn.cfm

8. /scripts/cdrh/cfdocs/cfpmn/denovo.cfm

9. /scripts/cdrh/cfdocs/cfRL/rl.cfm

10. /scripts/cdrh/cfdocs/cfMAUDE/TextSearch.cfm

11. /scripts/cdrh/cfdocs/cfRES/res.cfm

12. /scripts/cdrh/cfdocs/cfPMA/pma.cfm

13. /scripts/cdrh/cfdocs/cfHDE/hde.cfm

14. /scripts/cdrh/cfdocs/cfPCD/classification.cfm

15. /scripts/cdrh/cfdocs/cfStandards/search.cfm

16. /scripts/cdrh/cfdocs/cfCFR/CFRSearch.cfm

17. /scripts/cdrh/cfdocs/cfPCD_RH/classification.cfm

18. /scripts/cdrh/cfdocs/cfAssem/assembler.cfm

19. /scripts/cdrh/cfdocs/Medsun/searchReportText.cfm

20. /scripts/cdrh/cfdocs/cfClia/Search.cfm

21. /scripts/cdrh/cfdocs/cfTPLC/tplc.cfm

22. /scripts/cdrh/cfdocs/cfpcd/classification.cfm?start_search=1&productcode=FXX

23. /scripts/cdrh/cfdocs/cfcfr/cfrsearch.cfm?fr=878.4040

24. /scripts/cdrh/cfdocs/cfpcd/classification.cfm?start_search=1&productcode=FXX

25. http://www.accessdata.fda.gov/cdrh_docs/pdf/K955382.pdf

**3M South Africa Incoporated**



ACKNOWLEDGMENT AGREEMENT

**1 January 2020**          **Authorised Distributor**

**3M Personal Safety Division**

June 11, 2020

To Whom It May Concern:   ZHONGXINHAO TECHNOLOGY(HK) Co,.

The undersigned acknowledges that the products set forth in the attached invoices for 60 million wkly and 10 million wkly have been requested by ZHONGXINHAO TECHNOLOGY(HK) Co, and that Spirit Global Investments is an authorized agent to procure product for the company.

Sincerely,

President & Chief Operating Officer

**Sherwin Mercado Cruz**
Division Manager
Personal Safety Division

**Jessa Garcia Mendoza**
General Manager
Personal Safety Division

**EXHIBIT "13" PAGE 63 OF 90**

| 3M™ Health Care Particulate Respirator and Surgical Mask 1860 | 01/01/20 |
| --- | --- |



# Article Information Sheet

Copyright,2018,3M Company.
All rights reserved. Copying and/or downloading of this information for the purpose of properly utilizing 3M products is allowed provided that: (1) the information is copied in full with no changes unless prior written agreement is obtained from 3M, and (2) neither the copy nor the original is resold or otherwise distributed with the intention of earning a profit thereon.

This Article Information Sheet is provided as a courtesy in response to a customer request. A Safety Data Sheet (SDS) has not been prepared for these product(s) because they are articles. Articles are not subject to the Occupational Safety and Health Administration's Hazard Communication Standard (29 CFR 1910.1200(b)(6)(v)). As defined in this standard: "Article" means a manufactured item other than a fluid or particle: (i) which is formed to a specific shape or design during manufacture; (ii) which has end use function(s) dependent in whole or in part upon its shape or design during end use; and (iii) which under normal conditions of use does not release more than very small quantities, e.g., minute or trace amounts of a hazardous chemical, and does not pose a physical hazard or health risk to employees.

| **Document Group:** | 07-3087-9 | **Version Number:** | 1.02 |
| --- | --- | --- | --- |
| **Issue Date:** | 01/01/20 | **Supercedes Date:** | 03/20/15 |

## SECTION 1: Identification

**1.1. Product identifier**
3M™ Health Care Particulate Respirator and Surgical Mask 1860

**Product Identification Numbers**
70-0706-1236-4, 70-0715-6453-1, GT-5000-6279-6, XA-0100-0053-8, XA-0100-0121-3

**1.2. Recommended use and restrictions on use**

**Recommended use**
Respiratory Protection

**1.3. Supplier's details**
 **MANUFACTURER:**       3M
 **DIVISION:**           Personal Safety Division
 **ADDRESS:**            3M Center, St. Paul, MN 55144-1000, USA
 **Telephone:**          1-888-3M HELPS (1-888-364-3577)

**1.4. Emergency telephone number**
1-800-364-3577 or (651) 737-6501 (24 hours)

## SECTION 2: Hazard identification

This product is exempt from hazard classification according to OSHA Hazard Communication Standard, 29 CFR 1910.1200.

## SECTION 3: Composition/information on ingredients

| Ingredient | C.A.S. No. | % by Wt |
| --- | --- | --- |

EXHIBIT "13" PAGE 64 OF 90

**3M™ Health Care Particulate Respirator and Surgical Mask 1860        01/01/20**

| Polyester | 25038-59-9 | 30 -   40 Trade Secret * |
|---|---|---|
| POLYPROPYLENE | 9003-07-0 | 30 -   33 Trade Secret * |
| Polyisoprene rubber | Unknown | 18 -   20 Trade Secret * |
| Aluminum strip | Unknown | 9 -   11 Trade Secret * |
| Steel | Unknown | 2 -   5 Trade Secret * |
| Polyester/polyurethane foam | Unknown | 1 -   2 Trade Secret * |
| Ethylene/Acrylic Acid Copolymer | Unknown | < 1 Trade Secret * |
| Isooctyl Acrylate/Acrylic Acid Copolymer | Unknown | < 1 Trade Secret * |

*The specific chemical identity and/or exact percentage (concentration) of this composition has been withheld as a trade secret.

## SECTION 4: First aid measures

**4.1. Description of first aid measures**

**Inhalation:**
No need for first aid is anticipated.

**Skin Contact:**
No need for first aid is anticipated.

**Eye Contact:**
No need for first aid is anticipated.

**If Swallowed:**
No need for first aid is anticipated.

## SECTION 5: Fire-fighting measures

In case of fire: Use a fire fighting agent suitable for ordinary combustible material such as water or foam.

## SECTION 6: Accidental release measures

**6.1. Personal precautions, protective equipment and emergency procedures**
Not applicable.

**6.2. Environmental precautions**
Not applicable.

**6.3. Methods and material for containment and cleaning up**
Not applicable.

## SECTION 7: Handling and storage

**7.1. Precautions for safe handling**
This product is considered to be an article which does not release or otherwise result in exposure to a hazardous chemical under normal use conditions.

**7.2. Conditions for safe storage including any incompatibilities**
No special storage requirements.

3M™ Health Care Particulate Respirator and Surgical Mask 1860        01/01/20

## SECTION 8: Exposure controls/personal protection

This product is considered to be an article which does not release or otherwise result in exposure to a hazardous chemical under normal use conditions. No engineering controls or personal protective equipment (PPE) are necessary.

## SECTION 9: Physical and chemical properties

**9.1. Information on basic physical and chemical properties**

| | |
|---|---|
| General Physical Form: | Solid |
| Specific Physical Form: | Non-Woven Material |
| Odor, Color, Grade: | Turquoise outer shell, white inner shell, no odor |
| Odor threshold | *Not Applicable* |
| pH | *Not Applicable* |
| Melting point | *No Data Available* |
| Boiling Point | *Not Applicable* |
| Flash Point | *Not Applicable* |
| Evaporation rate | *Not Applicable* |
| Flammability (solid, gas) | Not Classified |
| Flammable Limits(LEL) | *Not Applicable* |
| Flammable Limits(UEL) | *Not Applicable* |
| Vapor Pressure | *Not Applicable* |
| Vapor Density | *Not Applicable* |
| Specific Gravity | *Not Applicable* |
| Solubility In Water | *Not Applicable* |
| Solubility- non-water | *Not Applicable* |
| Partition coefficient: n-octanol/ water | *No Data Available* |
| Autoignition temperature | *Not Applicable* |
| Decomposition temperature | *Not Applicable* |
| Viscosity | *Not Applicable* |
| Volatile Organic Compounds | *Not Applicable* |
| Percent volatile | *Not Applicable* |
| VOC Less H2O & Exempt Solvents | *Not Applicable* |

## SECTION 10: Stability and reactivity

This material is considered to be non reactive under normal use conditions.

## SECTION 11: Toxicological information

**Inhalation:**
No health effects are expected

**Skin Contact:**
No health effects are expected

**Eye Contact:**
No health effects are expected

**Ingestion:**
No health effects are expected

**Additional Information:**
This product, when used under reasonable conditions and in accordance with the directions for use, should not present a

EXHIBIT "13" PAGE 66 OF 90

| 3M™ Health Care Particulate Respirator and Surgical Mask 1860 | 01/01/20 |
|---|---|

health hazard. However, use or processing of the product in a manner not in accordance with the product's directions for use may affect the performance of the product and may present potential health and safety hazards.

## SECTION 12: Ecological information

This article is expected to present a low environmental risk either because use and disposal are unlikely to result in a significant release of components to the environment or because those components that may be released are expected to have insignificant environmental impact.

## SECTION 13: Disposal considerations

Dispose of contents/container in accordance with the local/regional/national/international regulations.

## SECTION 14: Transport Information

For Transport Information, please visit http://3M.com/Transportinfo or call 1-800-364-3577 or 651-737-6501.

## SECTION 15: Regulatory information

**Chemical Inventories**
**This product is an article as defined by TSCA regulations, and is exempt from TSCA Inventory requirements.**

## SECTION 16: Other information

**NFPA Hazard Classification**
**Health:**  0   **Flammability:**  1   **Instability:**  0   **Special Hazards:**   None

National Fire Protection Association (NFPA) hazard ratings are designed for use by emergency response personnel to address the hazards that are presented by short-term, acute exposure to a material under conditions of fire, spill, or similar emergencies. Hazard ratings are primarily based on the inherent physical and toxic properties of the material but also include the toxic properties of combustion or decomposition products that are known to be generated in significant quantities.

| **Document Group:** | 07-3087-9 | **Version Number:** | 1.02 |
|---|---|---|---|
| **Issue Date:** | 06/06/18 | **Supercedes Date:** | 03/20/15 |

DISCLAIMER: The information in this Article Information Sheet (AIS) is believed to be correct as of the date issued.3MMAKES NO WARRANTIES, EXPRESSED OR IMPLIED, INCLUDING, BUT NOT LIMITED TO, ANY IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE OR COURSE OF PERFORMANCE OR USAGE OF TRADE.User is responsible for determining whether the3Mproduct is fit for a particular purpose and suitable for user's method of use or application.Given the variety of factors that can affect the use and application of a3Mproduct, some of which are uniquely within the user's knowledge and control,it is essential that the user evaluate the3Mproduct to determine whether it is fit for a particular purpose and suitable for user's method of use or application.

3Mprovides information in electronic form as a service to its customers.   Due to the remote possibility that electronic transfer may have resulted in errors, omissions or alterations in this information,3Mmakes no representations as to its completeness or accuracy.   In addition, information obtained from a database may not be as current as the information in the AIS available directly from3M.

**3M USA AISs are available at www.3M.com**

**EXHIBIT "13" PAGE 67 OF 90**

# **3M** Order Confirmation

Page 1 of 1

3M Company
220-9E-02 3M Center
ST. PAUL MN  55144
USA

| Ship From | Order Date | Customer PO Nbr | 3M Order Nbr |
|---|---|---|---|
| See Below | 07/04/2020 | 39031 | FK58028 |

| Payment Terms | Incoterms | 3M Customer Service Contact |
|---|---|---|
| Net 30 Days | EXW<br>EX WORKS | Name:  Jack Jones<br>Phone:  1-651-555-5819<br>Fax:<br>e-mail:  JACKJONES@MMM.COM |

| Sold To:  Sichuan Daiya Lan Trading Co.Ltd.<br><br>PO BOX HKDLW<br>HK MIDONDAU  55144<br>Account Nbr: 16105028 | Bill To:  Sichuan Daiya Lan Trading Co.Ltd.<br><br>PO BOX HKDLW<br>HK MIDONDAU  55144<br>Account Nbr: 16105028 | Ship To:  JAKATA, Jl. Prof. Dr. Satrio Kav. 3-5<br>Karet  Kuningan  -<br><br>Jakarta  12940 Indonesia<br>Account Nbr: 26229450 |

Order Notes:

| Cust Line Nbr<br>3M Line Nbr | 3M ID<br>UPC<br>Catalog ID<br>Material  Ordered | Product Description | Order Qty<br>Unit | Qty To Deliver<br>Unit | Customer<br>Requested Date | Delivery Date | Unit Price | Net Price |
|---|---|---|---|---|---|---|---|---|
| 1<br>10 | 70070612364<br>707387419424<br>1438BC-12<br>7010271234 | Cust. Part Nbr.        31078<br>**Health Care Particulate Respirator**<br>and Surgical Mask 1860, N95<br>120 EA/Case<br><br>70070612364<br>Ship From:  1102 Roanoke,TX<br>Contract Nbr:  00000221 | 500,000<br>EA | 500,000<br>EA | 07/28/2020 | 07/28/2020 | 910,000.00 | 1.82 |

**EXHIBIT "13" PAGE 68 OF 90**

# 3M

# Invoice

Page 1 of 1

| Invoice Nbr | Invoice Date | Order Date | Payment Terms | Payment Due Date |
|---|---|---|---|---|
| FK58028 | 07/04/2020 | 07/04/2020 | Net 30 Days | Received By 07/04/2020 910,000.00 USD |

| Bill of Lading Nbr | Delivery Nbr | Shipment Date | Carrier | Customer PO Nbr |
|---|---|---|---|---|
| DACF047539 | 8012037791 | 07/04/2020 | ROBINSON, C H WORLDWIDE | 39031 |

Ship to:   Account Nbr  26229450

JAKATA, Jl. Prof. Dr. Satrio Kav. 3-5
Karet Kuningan - Jakarta 12940
Indonesia

Bill to:   Account Nbr  16105028

Sichuan Daiya Lan Trading Co.Ltd.
PO BOX HKDLW
HK MIDONDAU  55144

Obligor:   Account Nbr  16105028

Sichuan Daiya Lan Trading Co.Ltd.
PO BOX HKDLW
HK MIDONDAU  55144

Sold to:   Account Nbr  16105028

Sichuan Daiya Lan Trading Co.Ltd.
PO BOX HKDLW
HK MIDONDAU  55144

| 3M Contact: | Jack Jones | Ship From: | 1102 Roanoke,TX |
|---|---|---|---|
| Phone: | 1 16515555819 | Shipment Nbr: | 8016112345 |
| Email: | JACKJONES@MMM.COM | Pro/Parcel Tracking Nbr: | 7101416377 |
| Incoterms: | DAP PREPAID | | |
| 3M Order Nbr: | FK58028 | | |

| Cust Line Nbr 3M Line Nbr | 3M ID UPC Catalog ID Material Ordered | Product Description | Qty UOM | Unit Price | Amount |
|---|---|---|---|---|---|
| -- 10 | 70070612364 707387419424 1438BC-12 7010271234 | 1860 Respirator and Surgical Mask,120 EA/CS 70070612364 Batch Nbr: B19345 3M(TM) **Health Care Particulate Respirator and Surgical** Mask 1860, N95 120 EA/Case 70070612364 Order Special Charges / Allowances    Order Fee Tax Details    State Tax @ Mixed Rate    County Tax @ 2% | 500,000 EA* | 910,000.00 | 910,000.00   500.00  955,00.00 18,200.00 |

| Please remit payment to: | Financial EDI payment to: | Invoice Value | 910,000.00 |
|---|---|---|---|
| ZHONGXiNHAO TECHNOLOGY(HK) Co,. | ZHONGXiNHAO TECHNOLOGY(HK) Co,. | Special Charges / Allowances Total | 500.00 |
| | | Freight Total | 0.00 |
| | | Tax Total | 113,750.00 |
| | | Invoice Total | 1,023,750.00 |
| | | Currency | USD |

Payment Ref:   9400980735

**Please refer to terms and conditions of sale.**

# 3M

# Ship Notice

Page 1 of 1

**Transmission Date:** 06/09/2020

**To: Billing Contact**

| Ship From | Shipment Date | Estimated Delivery Date | Gross Weight | Shipment Cartons | Shipment Pallets |
|---|---|---|---|---|---|
| 1102 Roanoke, TX | 07/04/2020 | 07/04/2020 | 4,450,000.000  LB | 4167 | |

| Incoterms | Transport Mode | Carrier Information | | Customer Service |
|---|---|---|---|---|
| DAP PREPAID | CPU_FTL | Name: ROBINSON, C H WORLDWIDE    SCAC: RBTW<br>Bill of Lading:DACF047539<br>PRO Nbr: 7101416377 | | Jack Jones<br>Phone Nbr: 1-651-555-5819<br>Email: JACKJONES@MMM.COM |

| Sold to | Bill to | Ship to | Contact |
|---|---|---|---|
| Sichuan Daiya Lan Trading Co.Ltd<br>PO BOX HKDLW<br>HK MIDONDAU  55144<br>Account Nbr: 16105028 | Sichuan Daiya Lan Trading Co.Ltd<br>PO BOX HKDLW<br>HK MIDONDAU  55144<br>Account Nbr: 16105028 | Sichuan Daiya Lan Trading Co.Ltd.<br>AKATA, Jl. Prof. Dr. Satrio Kav. 3-5 Karet<br>Kuningan - Jakarta 12940 Indonesia<br><br>Account Nbr: 26229450 | Billing Contact |

| 3M Order Nbr | Delivery Nbr | Order Date | Customer PO Nbr | Order Gross Weight | Order Cartons | Mark Label |
|---|---|---|---|---|---|---|
| FK58028 | 8012037791 | 07/28/2020 | 39031 | 2,225,000.000  LB | 4167 | |

| Cust Line Nbr<br>3M Line Nbr | 3M ID<br>UPC<br>Catalog ID<br>Material Ordered | Product Description | Order Qty<br>UOM | Shipped Qty<br>UOM |
|---|---|---|---|---|
| 1<br>10 | 70070612364<br>707387419424<br>1438BC-12<br>7010271234 | 1860 Respirator and Surgical Mask,120 EA/CS<br>IN (16,5 INCH X 11,2 INCH X 8,5 INCH)<br>70070612364 | 500,000<br>EA* | 500,000<br>EA* |

\* Items listed using customer units

**STRAIGHT BILL OF LADING - SHORT FORM**
**ORIGINAL - NON NEGOTIABLE**

RECEIVED, subject to individually determined rates or contracts that have been agreed upon in writing between the carrier and shipper, if applicable, otherwise, to the rates, classifications and rules that have been established by the carrier and are available to the shipper, on request. The property described below, in apparent good order, except as noted (contents and condition of contents of packages unknown), marked, consigned, and destined as indicated below which said carrier (the word carrier being understood throughout this contract as meaning any person or corporation in possession of the property under the contract) agrees to carry to its usual place of delivery at said destination, if on its route, otherwise to deliver to another carrier on the route to said destination. It is mutually agreed as to each carrier of all or any of said property over all or any portion of said route to destination, and as to each party at any time interested in all or any of said property, that every service to be performed hereunder shall be subject to all the terms and conditions of the Uniform Domestic Straight Bill of Lading set forth (1) in Uniform Freight Classification in effect on the date hereof, if this is a rail or rail-water shipment, or (2) in the applicable motor carrier classification or tariff if this is a motor carrier shipment. Shipper hereby certifies that he is familiar with all the terms and conditions of the said bill of lading, including those on the back thereof, set forth in the classification or tariff which governs the transportation of this shipment, and the said terms and conditions are hereby agreed to by the shipper and accepted for himself and his assigns.

**3M BILL OF LADING NO.**
DACF047539
762624493

FROM   AT   4500 Northport Drive   Roanoke   TX

FCC   A87

| CHARGES TO BE | CARRIER REF NUMBER | | INSIDE DEL | DEL APPT. | DELIVERY APPOINTMENT DATE/TIME | | DEL SORT | EQUIPMENT | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| PREPAID | 8016112345 | | X | X | 06:00-12:00 | | X | X | | | |

3M   PAGE   1 of 1   DATE SHIPPED   7-04-2020

CONSIGNEE

Sichuan Daiya Lan Trading Co.Ltd.

PO BOX HKDLW
HK MIDONDAU 55144

DEST.   HK   55144
CUST   COUNTRY   CHN-HK

| | MODE | SCAC-CARRIER NAME | CAR OR VEHICLE INITIALS & NO. |
|---|---|---|---|
| | M | RBTW   C H ROBINSON WOR   246958 |  |

SPECIAL INSTRUCTIONS    ** SEAL **   0017935

Load # 123456

8016170202: DO NOT USE SPRINTER OR REEFER TRAILERS
8016170202: DELIVER BY 6/10/20!
8016170202: 2 DAY EMAIL FOR APPT, EMAIL BEFORE NOON!

**24-HOUR EMERGENCY CONTACT: CALL CHEMTREC 1-800-424-9300 or +1-703-527-3887**
**3M CHEMTREC CONTRACT NUMBER: 14721**

| PACKAGES | | HM | DESCRIPTION OF MATERIALS, SPECIAL MARKS, AND EXCEPTIONS | MAIN A/C | SUB A/C | WEIGHT (LBS.) | CLASS | FCC |
|---|---|---|---|---|---|---|---|---|
| NO. | KIND | | | | | | | |
| 1 | BOX | | RESPIRATOR SURGICAL MASKS, NIOSH, N95, DENSITY 0.909 LBS/CU FT | | | 2,225,00.0 | 250.0 | A87 |
| | | | SHIP REF/CUSTOMER P.O. NUMBERS INCLUDED ON THIS BILL OF LADING: | | | | | |
| | | | 8016112345/39031  Pieces:500,000   Weight:2,225,00.0 | | | | | |
| | | | ADDITIONAL SPECIAL INSTRUCTIONS: | | | | | |
| | | | 8016112345: EMAIL APPTS | | | | | |
| | | | END OF SPECIAL INSTRUCTIONS. | | | | | |
| | | | 500,000 MASKS AND BOXES WEIGHING 2,225,00 POUNDS. | | | | | |

SCAC-CARRIER NAME   RBTW

| | | | | |
|---|---|---|---|---|
| | TOTAL PIECES | TOTAL WEIGHT | 16:18 | |
| | | 2,225,000 | 6-10-2020 | |
| | 500,000 | | CUST_0123 | |

SUBJECT TO SECTION 7 OF CONDITIONS OF APPLICABLE BILL OF LADING, IF THIS SHIPMENT IS TO BE DELIVERED TO THE CONSIGNEE WITHOUT RECOURSE ON THE CONSIGNOR, THE CONSIGNOR SHALL SIGN THE FOLLOWING STATEMENT: THE CARRIER MAY DECLINE TO MAKE DELIVERY OF THIS SHIPMENT WITHOUT PAYMENT OF FREIGHT AND ALL OTHER LAWFUL CHARGES.

PER _____
SIGNATURE OF CONSIGNOR

THE FIBRE BOXES USED FOR THIS SHIPMENT CONFORM TO THE SPECIFICATIONS SET FORTH IN THE BOX MAKERS CERTIFICATION THEREON, AND ALL OTHER REQUIREMENTS OF THE UNIFORM FREIGHT CLASSIFICATION.

IT IS DECLARED THAT THE PACKING OF THE GOODS INTO THE CONTAINER/VEHICLE HAS BEEN CARRIED OUT IN ACCORDANCE WITH THE APPLICABLE PROVISIONS OF 49 CFR OR THE IMDG CODE.

PER _____   3M Company
Company

WHERE THE RATE IS DEPENDENT ON VALUE, THE AGREED OR DECLARED VALUE OF THE PROPERTY IS HEREBY SPECIFICALLY STATED BY THE SHIPPER TO BE NOT EXCEEDING THE LOWEST APPLICABLE TARIFF OR AGREED TO VALUATION. THIS STATEMENT TO APPLY ONLY IF IT RESULTS IN LOWER CHARGES.

IF PREPAID SEND FREIGHT BILL TO:
PERMANENT POST OFFICE ADDRESS OF SHIPPER:
P.O. BOX 33115
ST. PAUL, MINNESOTA 55133

CARRIER CERTIFICATION
HEREBY DECLARE THAT THE CONTENTS OF THIS CONSIGNMENT ARE FULLY AND ACCURATELY DESCRIBED ABOVE BY THE PROPER SHIPPING NAME AND ARE CLASSIFIED, PACKAGED, MARKED AND LABELLED/PLACARDED, AND ARE IN ALL RESPECTS IN PROPER CONDITION FOR TRANSPORT ACCORDING TO APPLICABLE INTERNATIONAL AND NATIONAL GOVERNMENTAL REGULATIONS.

PER _____
3M Company

REGULATORY MANAGER
3M Company

CARRIER ACKNOWLEDGES RECEIPT OF PACKAGES AND REQUIRED PLACARDS. CARRIER CERTIFIES EMERGENCY RESPONSE INFORMATION WAS MADE AVAILABLE AND/OR CARRIER HAS THE DOT EMERGENCY RESPONSE GUIDEBOOK OR EQUIVALENT DOCUMENT IN THE VEHICLE.

PER _____   DATE   7-28-2020

NUMBER OF PKGS

**EXHIBIT "13" PAGE 71 OF 90**

FORM 39000-A

# EXHIBIT "14"



# EXHIBIT "15"

Yeager Law Firm
134 Hunterian Place
Newnan, GA 30265
william@emersonstreetadvisors.com
Telephone: 858-212-7494

## Letter of Attestation

**TO**:  3M Distributor/ Reseller

Date: December 16, 2020

Dear Sir or Madam:

**PURCHASING:  3M Personal Protective Equipment Supplies**

I represent Sustenance Inc., with regards to purchase of the Product identified above.

This letter serves to attest that Sustenance Inc. is a duly formed California entity since 2011 with a current Statement of Information on file with the State. This letter serves to further attest Sustenance Inc. is ready willing and able to proceed to closing on the purchase of the many forms of Personal Protective Equipment.

This letter shall certify that my client has bank records demonstrating sufficient funds into the millions of dollars available for the purchase of the above Product. There are no known liens, commercial obligations or encumbrances of any kind afflicting said funds s that would affect Sustenance Inc.'s ability to conduct business and purchase Products.

Client confirms and declares that all funds are good, clean, clear and of non-criminal origin and that said funds have been earned in the course of normal commercial business and are of commercial origin and legally generated; further, the funds are not in breach of the "Money Laundering Regulation/Accord of 1993." howsoever interpreted and defined, whether within the host state of the transaction or internationally.

Further, I confirm that as of this date there are funds immediately available for transfer into your attorney's escrow account upon receipt/inspection of the Inspection Report (SGS) report and the physical goods.

For verifications of funds request, please email me at william@emersonstreetadvisors.com or call me at 858-212-7494 to schedule an attorney-to-attorney call. My Georgia State Bar Association number is 780645.  My email address william@emersonstreetadvisors.com

Sincerely,

William Shawn Yeager, Attorney

# EXHIBIT "16"



# PURCHASE ORDER

| | |
|---|---|
| **NUMBER** | 107 |

8th Sense Inc
217-650 Rue Graham Bell, Quebec,QC,
Canada, G1N 4H5
1-888-411-6956
Admin@8thsense.ca

| | |
|---|---|
| **DATE** | 2020-12-23 |

---

**Supplier information:**
**Sustenance Inc**
**3940 Broad Street Suite #7461**
**San Luis Obispo, CA 93401 US**

Mr Alex M. Khan
**1-800-880-6391**

| Client Number | CURRENCY | SHIPPING | TERMS | LOCATION | |
|---|---|---|---|---|---|
| SUSTENANCE | USD | Ground | CIF | Quebec,CA | |

| Article | Description of Item | | Quantity | Unit of measurement | COST | TOTAL COST |
|---|---|---|---|---|---|---|
| | | | | | | |
| 3M-1860 | N95 Respirator | | 1000000,00 | 1 Individual Mask | 2,09 $ | 2 090 000,00 $ |
| | | | | | | - $ |
| | | | | | **TOTAL COST (USD)** | **2 090 000,00 $** |

3M - 1860 N95 respirator
Size : Standard 3M 1860 N95 respirator size
NIOSH Approved: N95
OFFERS > 99% BFE (Bacterial Filtration Efficiency) according to ASTM F2101
Meets Canadian and US CDC guidelines for Mycobacterium tuberculosis exposure control
Fluid-resistant according to ASTM F1859
Made in the USA with globally sourced materials.
The seller guarantees that each mask is genuine

Signed By:

# EXHIBIT "17"

**Sustenance Inc.**
3940 Broad Street Suite # 7461
San Luis Obispo, CA  93401 US
800.880.6391

# Invoice



Sustenance Inc.

| | | | | | |
|---|---|---|---|---|---|
| 8th Sense Inc | | | 8th Sense Inc | | |
| 8th Sense Inc | | | 8th Sense Inc | | |
| 217-650 Rue Grahm-Bell | | | 217-650 Rue Grahm-Bell | | |
| Quebec Quebec  G1N-4H5 | | | Quebec Quebec  G1N-4H5 | | |
| Canada | | | Canada | | |

| 33577 | 12/30/2020 | $2,090,000.00 | 12/30/2020 | Due on receipt | |
|---|---|---|---|---|---|

| **PPE PRODUCTS:3M 1860**<br>Health Care Particulate Respirator and Surgical Mask | 1,000,000 | 2.09 | 2,090,000.00 |
|---|---|---|---|

Wiring Instruction
JP Morgan Chase
Sustenance Inc
Routing # 322271627
Account# 988830444

BALANCE DUE

**$2,090,000.00**

# EXHIBIT "18"

10:38

< 26    **Alessandro Mogul...**

Everything  10  Wed, Dec 30

Someone wants to bring you gloves
boxes tomorrow he is in LA
10:34 PM ✓✓

Where you want him to join you?
10:35 PM ✓✓

He can call me or come by my
office                      10:37 PM

Ok so the address is what I sent
you?                    10:37 PM ✓✓

6627 Bay Laurel Place
Avila Beach CA 93424
United States           10:37 PM

It's been a long time my friend
10:42 PM ✓✓

Thu, Dec 31

We will have packing list, AWB and
other pertinent documents in 4
hours for the 1M masks going out
today                     10:17 AM

I am waiting on the 300k but it's
ready and waiting for pick up, so we
will have shipped out today before

# EXHIBIT "19"



10:40

< 26   **Alessandro Mogul...**

with new plans, new opportunities and new memories.

Fri, Jan 1

Wish you a very happy new year 2021 dear friend Alessandro.

12:39 AM ✓✓

I appreciate you and your friendship, I am looking forward many year of future working together my friend Nicolas. Happy new year 🎆   12:53 AM

📞 Missed voice call at 10:37 AM

Wake up Nic   10:42 AM

📞 Missed voice call at 11:25 AM

Your masks buddy   11:36 AM

What is the ID of the parce   12:42 P

It is from Thailand??   12:42 PM ✓✓

EXHIBIT "19" PAGE 83 OF 90

# EXHIBIT "20"



**Health Canada** **Santé Canada**

**PROTECTED A**

**Seizure and Forfeiture Consent Request Letter**
*Food and Drugs Act – paragraph 23(2)(l), section 26.1 and subsection 27(1)*

> Customs Identification Numbers: 160-39193696 / 160-31165050 / 160-31165525 / 160-35076801 / 160-37893881 / 160-38342345 / 160-39193755 / 160-39193873 / 160-39193744

**BORDER CENTER EAST**
**200 René-Lévesque West Blvd**
**East Tower, 2nd Floor, Suite 1302**
**Montreal, Quebec**
**H2Z 1X4S**
**Tel.: Toll free (Canada & US): 1-833-622-0414**
**International Calls: 204-594-8061**
**Email: hc.healthproduct-import-produitsante.sc@canada.ca**
**Fax: 450-928-6521**

**Notice Date: 2021-03-29**
**Date of Seizure: 2021-03-29**

**Nicolas Giguère, Chief executive officer**
**8TH SENSE INC.**
**650 Graham Bell Street**
**Suite 217**
**Quebec, Quebec**
**G1N 4H5**
**Tel.: 418-389-2611**
**Email: ngiguere@8thsense.ca**

To Nicolas Giguère,

As described in the attached Reports of Examination for Customs Entry, the products in your shipments have been seized by the undersigned inspector pursuant to paragraph 23(2)(l) of the *Food and Drugs Act* (FDA), on March 29, 2021, since the undersigned inspector had reasonable grounds to believe the products within the shipment are in contravention of the *FDA* and the *Medical Devices Regulations* (MDR).

Please see the attached Reports of Examination for Customs Entry for more details.

Product Details

The products are represented as 3M N95 Masks, hereinafter referred to as "respirators". The shipments contain two types of respirators, namely the 1860 and the 1860S. All contraventions of the FDA/MDR discussed below refer to both models of respirators.

Respirator Classification

The respirators have the following descriptions on their labels:

- "NIOSH N95"

1

**EXHIBIT "20" PAGE 85 OF 90**

Health    Santé
Canada    Canada

**Seizure and Forfeiture Consent Request Letter**
*Food and Drugs Act – paragraph 23(2)(l), section 26.1 and subsection 27(1)*

**PROTECTED A**

Customs Identification Numbers: 160-39193696 / 160-31165050 / 160-31165525 / 160-35076801 / 160-37893881 / 160-38342345 / 160-39193755 / 160-39193873 / 160-39193744

- "Health Care Particulate Respirator and Surgical Mask" ("*Respirateur contre les particules pour soins de santé et masque chirurgical*" in French)
- "Meets CDC guidelines for M. tuberculosis exposure control" ("*Ce produit est conforme aux directives des CDC pour le contrôle de l'exposition à M. tuberculosis*" in French).

These respirators meet the definition of *device* as per section 2 of the FDA, and are subject to both the FDA and the MDR. More specifically, these respirators are classified as Class I medical devices according to Schedule 1 of the MDR.

You can contact the Medical Devices Bureau for more information about medical devices and their classes at the following coordinates:

> Tel.: 613-941-7285
> Email: hc.mdb.enquiries-enquetes.bmm.sc@canada.ca

Counterfeit Verification

After carefully reviewing information about the shipments and its products, the undersigned inspector came to the conclusion that the respirators are counterfeit. As per Health Canada's *Policy on Counterfeit Health Products* (POL-0048), Health Canada defines a counterfeit health product as follows:

> *A counterfeit health product is one that is represented as, and likely to be mistaken for, an authentic product.*

An element contributing to this decision is that 3M examined images of the respirators and declared, to the undersigned inspector, that they were counterfeit.

Counterfeit medical devices pose a health and safety risk to Canadians. The counterfeit respirators may not be capable of providing appropriate respiratory protection when compared with the legitimate product. Consequentially, given the COVID-19 pandemic, this could result in hospitalizations or even deaths.

False and Misleading Sale

Due to the large amount of respirators being imported by 8th Sense Inc., the undersigned inspector considers these shipments to be commercial. In this context, it is understood that the products will therefore be sold.

Section 2 of the FDA defines the term *sell* as follows:

> *sell* includes
>> **(a)** offer for sale, expose for sale or have in possession for sale — or distribute to one or more persons, whether or not the distribution is made for consideration, and

2

**EXHIBIT "20" PAGE 86 OF 90**

**Health   Santé**
**Canada   Canada**

**PROTECTED A**

**Seizure and Forfeiture Consent Request Letter**
*Food and Drugs Act – paragraph 23(2)(l), section 26.1 and subsection 27(1)*

> **(b)** lease, offer for lease, expose for lease or have in possession for lease;
> (*vente*)

The sale of a counterfeit device, with misleading labelling (see below), constitutes a contravention of subsection 20(1) of the FDA:

> **20 (1)**   No person shall label, package, treat, process, sell or advertise any device in a manner that is false, misleading or deceptive or is likely to create an erroneous impression regarding its design, construction, performance, intended use, quantity, character, value, composition, merit or safety.

Labelling – manufacturer name

The label of these respirators contains the following statement:

> "Made in U.S.A. with Globally Sourced Materials by
> 3M Health Care
> 2510 Conway Ave.
> St. Paul, MN 55144
> 1-800-228-3957
> www.3M.com/healthcare"

3M informed the undersigned inspector that these respirators did not originate from any 3M manufacturing facility and are therefore counterfeit.

Based on the products information provided by 3M, the undersigned inspector has concluded that 3M, the manufacturer named on the respirators label, was not the manufacturer of the products in your shipments. Therefore, the correct name and address of the manufacturer is not indicated on the label of the devices.  This is a contravention of paragraph 21(1)(b) of the MDR which states:

> **21 (1)**   No person shall import or sell a medical device unless the device has a label that sets out the following information:
> (…)
> (b) the name and address of the manufacturer;

Labelling – Performance Specification

The respirators are labelled as "NIOSH N95". This can only be stated for respirators that are NIOSH-approved. Genuine products from 3M are listed on the National Institute for Occupational Safety and Health (NIOSH) site, but 3M stated that they did not manufacture these products. Therefore, the undersigned inspector considers that the description "NIOSH N95" misrepresents the quality standard of the respirators in contravention of paragraph 21(1)(h) of the MDR, which states the following:

3

**EXHIBIT "20" PAGE 87 OF 90**

Health   Santé
Canada   Canada

**Seizure and Forfeiture Consent Request Letter**
*Food and Drugs Act – paragraph 23(2)(l), section 26.1 and subsection 27(1)*

**PROTECTED A**

Customs Identification Numbers: 160-39193696 / 160-
31165050 / 160-31165525 / 160-35076801 / 160-37893881 /
160-38342345 / 160-39193755 / 160-39193873 / 160-39193744

**21 (1)**   No person shall import or sell a medical device unless the device has a label that sets out the following information:

(…)

(h) unless self-evident to the intended user, the medical conditions, purposes and uses for which the device is manufactured, sold or represented, as well as the performance specifications of the device if those specifications are necessary for proper use;

Seizure Notice

As outlined above, the products are counterfeit and, as such, these shipments are not in compliance with section 20(1) of the FDA, and paragraph 21(1)(b) and (h) of the MDR.

The undersigned inspector, pursuant to paragraph 23(2)(l) of the FDA, seized the products in your shipments in order to address the contraventions noted above, and the potential health and safety risks.

Importer's Responsibility

Please note that this letter and the Reports of Examination for Customs Entry, attached to this letter, do not constitute a full assessment of the compliance of 8th Sense Inc.'s activities and products. We would like to remind you that it is 8th Sense Inc.'s responsibility to ensure that all its activities in respect of medical devices comply with the requirements set out in the FDA and the MDR.

Consenting to Forfeiture

Should you wish to consent to forfeit the seized product(s) to the Crown pursuant to subsection 27(1) of the FDA, please complete the corresponding section of the attached form and return a signed copy to the above border centre address. Subsection 27(1) of the FDA states:

**27 (1)**   If an inspector has seized an article under this Part and its owner or the person having possession, care or control of it at the time of its seizure consents to its forfeiture, the article is forfeited to Her Majesty in right of Canada and may be disposed of as the Minister or the Minister of Agriculture and Agri-Food may direct, at the expense of its owner or the person having possession, care or control of the article at the time of its seizure.

Consenting to the forfeiture of the products to the Crown means that they may be disposed of as the Minister of Health may direct, at your expense. Crown costs associated with the storage and disposal of products you forfeit, may be recovered in accordance with section 30.7 of the FDA.

Additionally, we wish to inform you that you, as the owner or person having possession, care or control of the seized products contained in this shipment at the time of their seizure, that an

4

**Health** **Santé**
**Canada** **Canada**

**Seizure and Forfeiture Consent Request Letter**
*Food and Drugs Act – paragraph 23(2)(l), section 26.1 and subsection 27(1)*

PROTECTED A

<table>
<tr><td>Customs Identification Numbers: 160-39193696 / 160-31165050 / 160-31165525 / 160-35076801 / 160-37893881 / 160-38342345 / 160-39193755 / 160-39193873 / 160-39193744</td></tr>
</table>

inspector, designated under the FDA, may on notice, store or move the seized product(s) at your expense as per paragraph 25(a) of the FDA, which states:

**25**  An inspector may, in respect of any article seized under this Part,
  (a) on notice to its owner or the person having possession, care or control of it at the time of its seizure, store it or move it at the expense of the person to whom the notice is given;

This may be necessary if there were to be logistical concerns regarding storage at a Canada Border Services Agency (CBSA) facility, for example. Crown costs associated with the movement and storage of seized products may also be recovered in accordance with section 30.7 of the FDA.

Disagreement with the Seizure

If you would like to make representations about this letter, including with respect to the contraventions identified above, you may, within 10 business days of the date of this notice noted above, write to the undersigned inspector at the above border centre address. Please include supporting information and documents with your response.

If you have any questions on the above, please contact the undersigned using the below contact information.

Additional Information

To assist in the mitigation of any health risks associated with the products, please provide, on a voluntary basis, any information you have about this/these product(s) (please see section "**Voluntary information requested**" of the attached form).

| Name of Inspector | Signature | Date | Border Centre |
|---|---|---|---|
| Edouard-Paolo Echeverria-Velasquez | *[signature]* EcheverriaVelasquez, EduardPaolo Je suis l'auteur du document 29-03-2021 14:24:52 | 2021-03-29 | East |

**Attached**: Reports of Examination for Customs Entry

5

**EXHIBIT "20" PAGE 89 OF 90**

**Confirmation of Ownership or Entitlement to Possession of Seized Products in Shipment**

I, _____(print full name),

☐ am the owner of the products or represent the company _____ (print full name of company) which owns these products.

    **OR**

☐ am entitled to possess the products because

_____

_____(insert explanation).

_____    _____    _____
Signature    Position with Company (if applicable)    Date

**Consent to Forfeiture of Products to Crown**

I, _____(print full name ), as the owner or person having possession, care or control of the product(s) at the time of its/their seizure, as described above, consent to forfeit it/them to the Crown.  I understand that it/they may be disposed of as the Minister of Health may direct.

_____    _____    _____
Signature    Position with Company (if applicable)    Date

**Voluntary information requested (VIR):**

**(VIR)** Business name that received payment from credit card or through other means:
_____

**(VIR)** Website address of the business referred to above:
_____

**(VIR)** Seller phone number: _____

We greatly appreciate your cooperation by voluntarily providing the information above to help ensure that unauthorized health products do not enter Canada.

**Privacy Notice**
The personal information you provide to Health Canada will be used by Health Canada for compliance purposes  under the *Food and Drugs Act* and handled in accordance with the *Privacy Act*.
**Why are we collecting your personal information?** We are collecting personal information for the primary purpose of confirming that you, or your company, are either the owner or a person entitled to possess the products contained in this shipment, as described in the *Food and Drugs Act* (FDA), and to collect information regarding Health Canada's assessment of the product and/or consent to forfeiture.
**Will we use or share your personal information for any other reason?** The information you provide may be shared with law enforcement agencies, and regulatory bodies outside of, and internal to, Health Canada.
**If you don't want to provide your personal information?** The information you provide is voluntary, if you refuse to provide your personal information, as requested in the above letter, it may be concluded that the subject import is unclaimed and may be forfeited to the Crown pursuant to section 26.1(1)(a) of the FDA. The latter is specific to the section above titled "Confirmation of Ownership or Entitlement to Possession of Products in Shipment".
**What are your rights?** You have the right to access and request a correction and/or notation to your personal information.  You also have a right to complain to the Privacy Commissioner of Canada if you feel your personal information has been handled improperly. For more information about these rights, or about how we handle your personal information, please contact Health Canada's Privacy Coordinator at 613-948-1219 or privacy-vie.privee@hc-sc.gc.ca
**For more information:** The collection of your personal information is described in Info Source at infosource.gc.ca.
(https://www.canada.ca/en/health-canada/corporate/about-health-canada/activities-responsibilities/access-information-privacy/info-source-federal-government-employee-information.html#a26)

Refer to the personal information bank (PIB) : Pharmaceutical Drugs HC PPU 407, Medical Devices HC PPU 405, Natural Health Products HC PPU 106

**EXHIBIT "20" PAGE 90 OF 90**    1